844 P.2d 698

Robert R. CHAMBERS, Plaintiff–
Respondent–Cross Appellant,

v.

Norma THOMAS, Personal Representa-
tive of the estate of Bob J. Thomas,
Defendant–Appellant–Cross    Respon-
dent.

Norma THOMAS, Personal Representa-
tive of the estate of Bob J. Thomas,
Counterclaimant–Third Party Plaintiff–
Appellant–Cross Respondent,

v.

Robert R. CHAMBERS, Counterdefen-
dant–Respondent–Cross Appellant,

and

Marvin J. Stucki and Kathleen Stucki,
Third Party Defendants.

No. 19561.

Supreme Court of Idaho,
Idaho Falls, Sept. 1992 Term.

Dec. 23, 1992.

Anderson, Pike & Bush, Idaho Falls, for
appellant.  Dale W. Storer, argued.

Stephen D. Hall, Idaho Falls, for respon-
dent.

McDEVITT, Justice.

## BACKGROUND AND PRIOR PROCEEDINGS

On September 16, 1976, Bob Thomas,
now deceased, entered into a real estate
purchase and sale agreement with the
Stuckis, selling the Stuckis his two-hundred
(200) acre farm located near Howe, Idaho

("Thomas–Stucki Contract"). At this time, the entire parcel was subject to two FmHA mortgages each in the amount of $30,-000.00.

On March 2, 1977, the Stuckis assigned their entire interest in the Thomas–Stucki contract to the Bacon Company ("Bacon"). Under the Stucki–Bacon Assignment, Marvin Stucki's father, Wendell Stucki, assigned his interest in two other farms, the Owens and Harshbarger farms, to Bacon. In his deposition, Marvin Stucki testified that the purpose of this transfer was for Bacon to secure "long-term financing" for the mortgages encumbering the 200 acres.

On March 17, 1978, Bacon entered into a real estate exchange agreement with Chambers ("Bacon–Chambers Agreement"). Under this agreement, Bacon sold its interest in the Owens and Harshbarger farms and 160 acres of the 200 acre Thomas–Stucki farm. Approximately three weeks later, Bacon executed an assignment of contract and warranty deed for the 160 acres.

The consent of Thomas was not obtained for the Stucki–Bacon or the Bacon–Chambers transfers.

In late August of 1978, FmHA notified the Stuckis that Chambers was not a qualified borrower under the terms and conditions of the FmHA mortgages against the Thomas farm and that they would foreclose their mortgages against the entire 200 acres if the matter was not resolved. Stucki and Chambers refinanced the FmHA indebtedness using a home and the remaining forty (40) acres as security. The Stuckis then approached Thomas to get the necessary deed. Chambers and Thomas dispute the extent of Chambers' knowledge of Stucki's efforts and contacts with Thomas.

Stucki traveled to California to persuade Thomas to execute the necessary deed. As a result, Stucki and Thomas executed an amendment and addendum to the contract of sale on May 23, 1979 ("1979 Amendment"). Under the terms of the 1979 Amendment, Stuckis agreed to increase the interest rate on the contract by two percent (2%) in exchange for Thomas' agreement to deliver the necessary deed. The two original FmHA mortgages were then paid in full.

The Stuckis eventually declared bankruptcy. After the bankruptcy, Chambers continued making payments on the Thomas–Stucki contract until 1989, when the district court ruled that the 1979 Amendment increasing the interest rate payment was secured by the 160 acres. However, neither the Stuckis nor Chambers ever made the additional 2% interest payment. Chambers then stopped paying on the contract, and Thomas requested foreclosure of the Stuckis' and Chambers' interest.

After the district court held that the 1979 Amendment was enforceable against Chambers, Chambers made two motions to amend his complaint to add a claim for recovery of monies paid under the contract after 1979. Both motions were denied by the court.

On January 24, 1990, the district court granted partial summary judgment to Thomas and ordered the property be sold at judicial sale. At this point, however, the court did not decide the personal liability of the Stuckis or Chambers. After the proceeds of the sale were determined insufficient, the district court rendered judgment partly in favor of Chambers and Thomas and entirely against the Stuckis. Thereafter, a new district judge succeeded the original judge, vacated the judgment, and ordered a new trial on the personal liability issue.

On March 5, 1991, Chambers served a notice of redemption upon the sheriff and Thomas. Thomas moved to strike the notice, and the court, on April 25, 1991, denied the motion without an evidentiary hearing.

On April 29, 1991, the Stuckis settled and were dismissed from the action.

On June 18, 1991, the district court granted Chambers' motion for summary judgment. In doing so, the court ruled that Chambers was not personally liable on the original contract. On August 20, 1991, the court denied Thomas' motion for reconsideration.

On September 27, 1991, Thomas filed a notice of appeal pursuant to I.A.R. 11(a)(1). Thomas appealed "from the Memorandum Decision dated June 18, 1991, and the Orders dated April 25, 1991 and August 20, 1991...."

On October 15, 1991, Chambers filed a notice of cross-appeal pursuant to I.A.R. 11(a)(1).[1] Chambers cross-appealed "from the Order entered October 10, 1989, the Memorandum Decision entered November 17, 1989, and the Order entered July 19, 1990...."

## ANALYSIS

The parties raise the following issues on appeal and cross-appeal:

I. Was the district court correct in ruling that Chambers was not personally liable for the performance of the Thomas–Stucki contract?

II. Was the district court correct in ruling that the parol evidence rule precluded consideration of Chambers' deposition testimony regarding assumption of the Thomas–Stucki contract?

III. Did the district court err in granting Chambers a right of redemption?

IV. Is Thomas entitled to reasonable attorney fees and costs on appeal?

V. Did the district court abuse its discretion in denying Chambers leave to amend his complaint?

### I.

*Was The District Court Correct In Ruling That Chambers Was Not Personally Liable For The Performance Of The Thomas–Stucki Contract?*

■ The district court correctly ruled that Chambers was not personally liable for the performance of the Thomas–Stucki Contract. In order for Chambers to be personally liable on the Thomas–Stucki Contract, he would have had to assume Stucki's obligations under that contract. In order to determine Chambers' obligations, we must look to the Bacon–Chambers Agreement. The relevant portion of that agreement provides:

NOW, THEREFORE, it is hereby mutually agreed as follows:

\* \* \* \* \* \*

2. That to induce [Chambers] to pay the said sum of money and to accept the [Thomas] contract, and the rights [and] obligations pursuant thereto[, Bacon] hereby represent[s] to [Chambers] as follows: ...

3. That in consideration of [Bacon] executing and delivering this agreement, [Chambers] covenant[s] with [Bacon] as follows:

a. That [Chambers] will duly keep, observe and perform all of the terms, conditions and provisions of the [Stucki–Thomas] agreement that are to be kept, observed and performed by [Bacon].

Chambers agreed that he would be obligated to do anything that Bacon was obligated to do. The final piece of the puzzle, then, is to look to the Stucki–Bacon Assignment. Nowhere in the Stucki–Bacon Assignment does Bacon assume personal liability for the Thomas–Stucki contract. In fact, the purpose of this assignment, as recited in the fourth paragraph, is for Bacon to "provide his financial expertise and management abilities and financial backing to the STUCKIS."

■ Idaho courts will not presume an obligation from the fact of an assignment. Instead, the party asserting such a personal obligation must prove the existence of an express assumption by clear and unequivocal proof. *Murr v. Selag Corp.*, 113 Idaho 773, 780, 747 P.2d 1302, 1309 (1987). The only clear evidence in this case is that Chambers promised to do anything that Bacon promised to do, and Bacon did not assume the Thomas–Stucki contract. Since Bacon had not undertaken a personal obli-

---

**1.** Idaho Appellate Rule 15(a) reads: "After an appeal has been filed, a timely cross appeal may be filed...."

gation to Thomas, Chambers did not undertake a personal obligation to Thomas.

## II.

*Was The District Court Correct In Ruling That The Parol Evidence Rule Precluded Consideration Of Chambers' Deposition Testimony Regarding Assumption Of The Thomas–Stucki Contract?*

■ The district court correctly ruled that the parol evidence rule precluded consideration of Chambers' deposition testimony regarding assumption of the Thomas–Stucki contract. The district court ruled that "[a]fter careful introspection of the relevant documents in the present case the court concludes ... the written agreement is complete upon its face and unambiguous...." In a footnote, the court further stated that "[i]t should be noted that the Court finds neither patent nor latent ambiguity present in any of the documents in question." We agree.

This Court has explained the parol evidence rule as follows:

If the written agreement is complete upon its face and unambiguous, no fraud or mistake being alleged, extrinsic evidence of prior or contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the written contract.

*Valley Bank v. Christensen,* 119 Idaho 496, 498, 808 P.2d 415, 417 (1991), citing *Green v. K.S. Webster & Sons,* 77 Idaho 281, 291 P.2d 864 (1955), and *Milner v. Earl Fruit Co.,* 40 Idaho 339, 232 P. 581 (1925).

In this case, Thomas sought the admission of certain testimony by Chambers given during his deposition which dealt with his understanding of his obligations under the Bacon–Chambers Agreement. In order to do so, the agreement must be either not fully integrated, in which case the parol evidence rule would not apply, or, if the agreement is fully integrated, it must be ambiguous, or the testimony must be admitted for some purpose other than contra-

dicting, varying, altering, or detracting from its terms.

The district court ruled that "the integrated character of the documents has been established. In so ruling, the court quoted the merger clause from paragraph 14 of the Bacon–Chambers Agreement. "A merger clause in a written agreement is one means of proving the integrated character of a writing." *Valley Bank,* 119 Idaho at 498, 808 P.2d at 417, citing *Tapper Chevrolet v. Hansen,* 95 Idaho 436, 510 P.2d 1091 (1973). Because the district court ruled that the documents were fully integrated, "evidence of prior or contemporaneous oral agreements relating to the same subject matter is inadmissible to vary, contradict, or enlarge the terms of the written agreement." *Valley Bank,* 119 Idaho at 499, 808 P.2d at 418.

As we stated in Part I of our analysis, the language of Bacon–Chambers Agreement is clear in providing that Chambers agreed to do whatever Bacon was obligated to do. As the district court found, there is nothing ambiguous about Chambers' promise.

The testimony Thomas seeks to have admitted deals with the extent of Chambers' promise. Under the agreement, Chambers agreed to do whatever Bacon agreed to do. Thomas seeks to admit the testimony to prove that Chambers agreed to assume the Thomas–Stucki Contract, a purpose that contradicts, varies, alters, and detracts from the plain language of the Bacon–Chambers Agreement.

Whatever Chambers' understanding was of his obligations under the contract, it cannot be used to defeat the integrated and unambiguous agreement between himself and Bacon. We therefore hold that the district court correctly rejected the testimony as violative of the parol evidence rule.

## III.

*Did The District Court Err In Granting Chambers A Right Of Redemption?*

■ This case is a suit in equity. Statutory redemption is a legal remedy. Thus, we are not dealing with statutory redemp-

tion. Instead, we are dealing with equitable redemption. Specifically, we are dealing with the following: The trial court, sitting in equity, granted Chambers' request for redemption and fashioned its remedy with the procedures set forth in the statutes for statutory redemption. Nonetheless, it is still *equitable* redemption and must be examined from that perspective.

Equitable redemption was first dealt with by this Court in *Machold v. Farnan*, 20 Idaho 80, 117 P. 408 (1911), a case for specific performance of a contract for the sale of real estate. Machold, the plaintiff-appellant, alleged that the repayment of money which had been loaned to him was secured by a deed from a third party to Farnan, the defendant-respondent, and a contract between himself and Farnan; these two documents being "intended as a mortgage." *Machold*, 20 Idaho at 84, 117 P. at 409. Farnan denied these allegations and prayed for quiet title. *Machold*, 20 Idaho at 84, 117 P. at 409. The trial court ruled the deed and contract to be a mortgage securing the repayment of the loan along with interest and taxes to the date of trial and that Machold would have ninety (90) days to pay it off, or, if he failed, have the title to the property quieted against him. *Machold*, 20 Idaho at 84–85, 117 P. at 409.

This Court affirmed the trial court in *Machold*. At the outset, we noted that Machold had not requested permission to redeem from the "mortgage," and that there is:

> [N]o such thing as an action for the sole object of declaring a deed to be a mortgage, as the court will not grant that relief unless the plaintiff shall be willing to have the whole controversy disposed of by offering to redeem from the mortgage so established.

*Machold*, 20 Idaho at 85, 117 P. at 409, citing *Mack v. Hill*, 28 Mont. 99, 72 P. 307 (1903). However, since the trial court treated the case as one where the plaintiff requested redemption, we found its remedy proper. In this regard, we stated that when "[the mortgagor] does sue, offering to redeem and praying that the premises may be reconveyed to him, the court is authorized, if the facts warrant it, to declare that the deed, absolute in its terms, was intended as a mortgage, and to prescribe the terms of redemption and reconveyance." *Machold*, 20 Idaho at 86, 117 P. at 409, quoting *Mack*, 28 Mont. at 103, 72 P. at 308, quoting *Cowing v. Rogers*, 34 Cal. 648, 11 Pac. States Reports (1868). Further, we recognized "the general rule is that it is not necessary that there be any provision in the decree for the sale of the property when the court finds the deed and agreement to be a mortgage because the action is not an action to foreclose, and therefore the usual order of sale in foreclosure cases is not required." *Machold*, 20 Idaho at 86, 117 P. at 410, citing *Cowing*, 34 Cal. 648, 11 Pac. States Reports; *Cline v. Robbins*, 112 Cal. 581, 44 P. 1023 (1896); *Mack*, 28 Mont. 99, 72 P. 307; *Decker v. Patton*, 120 Ill. 464, 11 N.E. 897 (1887); *Martin v. Ratcliff*, 101 Mo. 254, 20 Am.St. 601, 13 S.W. 1051 (1890); and *Rodman v. Quick*, 211 Ill. 546, 71 N.E. 1087 (1904). Finally, we also recognized the distinction between statutory redemption and equitable redemption:

> The distinction must be carried in mind between a statutory redemption which is from the sale, and not from the mortgage, and the equitable redemption established by the courts, in which the redemption is from the mortgage and not from any sale, and out of which springs the rule that the redemptor must do equity and pay all that is due under the mortgage.

*Machold*, 20 Idaho at 87–88, 117 P. at 410, quoting *Rodman*, 211 Ill. at 544, 71 N.E. at 1090.

In the instant case, the trial court, exercising its equitable power, elected the redemption procedure set forth in the statutes as a mechanism to carry out its remedy. We hold that the trial court's action was a proper exercise of its equitable power.

## IV.

### *Is Thomas Entitled To Reasonable Attorney Fees And Costs On Appeal?*

Thomas requested attorney fees on appeal pursuant to a provision in the Thom-

as–Stucki Contract, which provides that if either party should have to employ an attorney to enforce the contract, the defaulting party agrees to pay the others reasonable attorney fees.

In part I of our analysis, we held that Chambers was not personally liable for the performance of the Thomas–Stucki contract. It follows from our holding that Chambers has not defaulted on the Thomas–Stucki contract. In addition, Thomas is the losing party on appeal. Therefore, we deny Thomas' request for attorney fees on appeal.

### V.

*Did the District Court Abuse Its Discretion in Denying Chambers' Leave to Amend His Complaint?*

■ Rule 15(a) of the Idaho Rules of Civil Procedure empowers the trial judge with discretion to allow a party to amend his or her complaint after a responsive pleading has been filed. Whenever a discretionary ruling of a trial court is before this Court, our inquiry is threefold:

(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Sun Valley Shopping Ctr. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991), citing *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

■ The district court's order denying Chambers' motion to amend his complaint to include a cause of action against the estate of Bob J. Thomas reveals compliance with our standard of review. The district court ruled that the proposed amendment was not a valid claim because of its previous ruling that Thomas had not received notice of Chambers' contention that he was not bound by the 1979 Amendment. "If the amended pleading does not set out a valid claim ... it is not an abuse of discre-

tion for the trial court to deny the motion to file the amended complaint." *Black Canyon Racquetball Club v. Idaho First Nat'l Bank,* 119 Idaho 171, 175, 804 P.2d 900, 904 (1991). We conclude that the district court did not abuse its discretion in denying Chambers' motion for leave to amend his complaint.

For the foregoing reasons, the decision of the district court is affirmed.

Costs to respondent Chambers.

BAKES, C.J., and BISTLINE, JOHNSON and TROUT, JJ., concur.