106 P.3d 465

John P. HOWARD, Thomas H. Lopez and Michael E. Kelly, individually and as former members of Howard Ellsworth Ipsen Perry & Lopez, PLLC, a professional limited liability company, Plaintiffs–Respondents–Cross Appellants,

v.

Mark PERRY, Defendant–Appellant–Cross Respondent,

and

John Does I–III, former members of Howard Ellsworth Ipsen Perry & Lopez PLLC, a professional limited liability company, Defendants–Cross Respondents.

No. 29973.

Supreme Court of Idaho,
Boise, January 2005 Term.

Feb. 7, 2005.

Elam & Burke, P.A., and Perry Law, PC, Boise, for appellant/cross-respondent. M. Allyn Dingel, Jr., argued.

Hawley, Troxell, Ennis & Hawley LLP, Boise, for respondents/cross-appellants. Merlyn W. Clark argued.

EISMANN, Justice.

This is an appeal from a judgment in litigation arising from the dissolution of a law firm organized as a professional limited liability company. The Plaintiffs raise two issues on appeal: (1) whether the district court erred in holding that the parties' written operating agreement was not integrated, so that parol evidence was admissible to vary its terms; and (2) whether the district court distributed the company's assets according to the terms of the operating agreement. We reverse the district court on the first issue and affirm it on the second. Because we reverse the district court on the first issue, we also vacate the judgment. The named Defendant likewise raises two issues on appeal: (1) whether the district court correctly held that his attorney fees incurred in defending this lawsuit were not a debt of the limited liability company; and (2) whether the district court erred in denying his request for an award of attorney fees under Idaho Code § 12–120(3) and 12–121. We affirm the district court on the first issue and do not address the second because with the judgment vacated there is at present no prevailing party.

## I. FACTS AND PROCEDURAL HISTORY

In July 1998, John P. Howard, Thomas H. Lopez, and Michael E. Kelly were leaving the law firm of Quane, Smith, Howard & Hull. They met to discuss forming a new law firm with Mark B. Perry, Loren C. Ipsen, and J. Michael Kulchak, who were partners in the law firm of Ellsworth, Ipsen & Perry, and with Thomas V. Munson, an attorney who worked as an independent contractor with that firm. They all agreed to form a professional limited liability company to be known as the law firm of "Howard Ellsworth Ipsen & Perry PLLC" (herein "Firm"). On August 1, 1998, they executed a written operating agreement to govern the conduct of the business and the affairs of the Firm.

On October 1, 2000, the parties executed a written amendment to the operating agreement, which added an additional member and changed the formula for distributing income. They executed a second amended operating agreement on January 1, 2001, which replaced the original operating agreement as amended. The second agreement changed the name of the Firm to "Howard Ellsworth Ipsen Perry & Lopez," dropped the member who had been added in October 2000, and made some other changes in the terms of the original operating agreement.

In September 2001 the Firm dissolved. On January 15, 2002, the Plaintiffs, John Howard (Howard), Thomas Lopez (Lopez), and Michael Kelly (Kelly), filed this action against Mark Perry (Perry), John Does I–III, and the Firm seeking a judicially supervised winding up of the Firm and distribution of its assets. John Does I–III were Loren Ipsen (Ipsen), Michael Kulchak (Kulchak), and Thomas Munson (Munson). On November 15, 2002, the Plaintiffs filed an amended complaint, dropping the Firm as a named defendant and alleging claims of conversion and breach of fiduciary duty against Perry, who had served as the managing member of the Firm. The prayer for relief also asked that the affairs of the Firm be wound up and its assets distributed according to law.

The matter was tried to the district court sitting without a jury, and on March 28, 2003, the court issued its written findings of fact, conclusions of law, and order. By the end of the trial, the claims against Perry focused upon two issues: his use of Firm funds to pay a debt to Wells Fargo (Wells Fargo loan) that had been incurred by Ipsen, Perry, and Kulchak prior to the formation of the Firm and his use of Firm funds to pay counsel fees incurred in defending the initial complaint

that sought a judicially supervised winding up of the firm and distribution of its assets.

The district court held that the operating agreement executed on August 1, 1998, was not an integrated agreement, that parol evidence was therefore admissible to vary the terms of the agreement, and that the parties had orally agreed that the Firm would assume the Wells Fargo loan. The court also found that Perry had not used Firm funds to make any payments to his counsel after the Plaintiffs had filed their amended complaint asserting claims against Perry individually. The court concluded that the Plaintiffs had failed to prove any claim for conversion or breach of fiduciary duty against Perry. It ordered that the remaining funds of the Firm be distributed first to return each member's capital investment and then divided equally among them.

Both sides of the litigation filed motions asking the court to amend its findings of fact and conclusions of law and to award them attorney fees. The district court denied all of the motions. Perry appealed, and the Plaintiffs cross-appealed. The final judgment was entered on December 1, 2003.

## II. ISSUES ON APPEAL

A. Did the district court err in finding that the operating agreement was not an integrated contract and in admitting parol evidence to vary the terms of the contract?

B. Did the district court err in its distribution of the assets of the Firm?

C. Did the district court err in failing to rule that Perry's attorney fees were a debt of the Firm?

D. Did the district court err in failing to award Perry attorney fees?

E. Is Perry entitled to an award of attorney fees on appeal?

## III. ANALYSIS

A. **Did the District Court Err in Finding that the Operating Agreement Was Not an Integrated Contract and in Admitting Parol Evidence to Vary the Terms of the Contract?**

The Plaintiffs in their cross-appeal contend that the district court erred in admitting extrinsic evidence to modify the terms of the operating agreement. The operating agreement executed on August 1, 1998, contained a clause that provided, "This Operating Agreement represents the entire agreement among the members with respect to the organization and operation of the firm." The second operating agreement, executed on January 1, 2001, contained an identical clause. The district court initially held that this clause was a clear and unambiguous merger clause that barred parol evidence of prior or contemporaneous agreements that would vary, contradict, or enlarge the terms of the operating agreement. The district court later held, however, that the operating agreement was not an integrated contract because of issues not addressed within it.

When the Firm was formed on August 1, 1998, Howard, Lopez, and Kelly did not have office space and had very little office equipment. Ipsen, Perry, and Kulchak had an ongoing law practice with office space and equipment. They also had an outstanding loan owing to First Security Bank, which later became Wells Fargo, for past operating expenses due to delays in a large case, a copier lease, and an office lease. The operating agreement did not mention any of those assets or debts. The district court held that because the operating agreement did not mention the contributions of office equipment by Ipsen, Perry, and Kulchak, the payment of the ongoing copier lease, the payment of office rent, or the Wells Fargo loan, it did not reflect the entire agreement of the parties and was therefore not an integrated contract. After considering conflicting testimony, the court found that the Firm had orally assumed the Wells Fargo loan. The district court erred in holding that the operating agreement was not an integrated contract.

If a written contract is complete upon its face and unambiguous, no fraud or mistake being alleged, extrinsic evidence of prior or contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to, or detract from the terms of the contract. *Kimbrough v. Reed,* 130

Idaho 512, 943 P.2d 1232 (1997). A written contract that contains a merger clause is complete upon its face. *Id; Chambers v. Thomas,* 123 Idaho 69, 844 P.2d 698 (1992); *Valley Bank v. Christensen,* 119 Idaho 496, 808 P.2d 415 (1991). The purpose of a merger clause is to establish that the parties have agreed that the contract contains the parties' entire agreement. The merger clause is not merely a factor to consider in deciding whether the agreement is integrated; it proves the agreement is integrated. To hold otherwise would require the parties to list in the contract everything upon which they had not agreed and hope that such list covers every possible prior or contemporaneous agreement that could later be alleged.

Perry argues on appeal that evidence regarding the assumption of the Wells Fargo loan was not barred by the parol evidence rule because the assumption was a separate and distinct contract that was independent of the operating agreement. *See* 29A Am. Jur.2d *Evidence* § 1121 (1994). The district court did not address that issue, probably because Perry's argument in the district court focused upon whether the operating agreement was integrated. We therefore express no opinion on it. Because the district court's judgment was based upon its erroneous determination that the operating agreement was not integrated, we vacate the judgment.

## B. Did the District Court Err in its Distribution of the Assets of the Firm?

■ The Plaintiffs in their cross-appeal challenge the district court's distribution of the Firm's assets. The second operating agreement provided that the Firm's assets would be distributed as follows:

**DISTRIBUTION OF ASSETS.** Upon the winding up of the firm, its assets shall be distributed in the following order of priority:

(a) To creditors, including members who are creditors, to the extent permitted by law, in satisfaction of the liabilities of the firm.

(b) To members in satisfaction of liabilities for distribution under Article 5 of this Operating Agreement.

(c) To members for the return of their capital contributions.

(d) To members in equal shares.

Subsection (b) provides that the second priority of distribution is the "liabilities for distribution under Article 5 of this Operating Agreement." Article 5 of the operating agreement specified how fee income was to be allocated among the members of the Firm. It provided that each member was entitled to receive a monthly draw and quarterly bonus payments. The quarterly bonus payments would pay each member the money actually collected during the quarter on that member's files, after certain deductions not at issue here.

The district court held that "liabilities for distribution under Article 5 of this Operating Agreement" would be determined as of the date of dissolution. The Plaintiffs do not challenge that holding. Because all of the draws due through September 2001 and the quarterly bonuses due December 5, 2001, had been paid, the district court held that there were no liabilities for distributions owing under Article 5. The result of that holding was to convert accounts receivables for the Plaintiffs' legal work, which would go primarily to them if distributed under Article 5, into assets of the Firm, which would be divided equally among all members if distributed under Article 7. The Plaintiffs contend that this is unfair because their clients paid more slowly than did the clients of the other four members of the Firm. Thus, the other members collected most of their outstanding fees in the quarterly bonus payments made in December, while the Plaintiffs did not. The Plaintiffs argue that the phrase "liabilities for distribution under Article 5" should include a member's right to receive fees his clients paid after dissolution.

■ Whether a contract is ambiguous is a question of law over which we exercise free review. *Lovey v. Regence BlueShield of Idaho,* 139 Idaho 37, 72 P.3d 877 (2003). The operating agreement is not ambiguous in this regard. Article 7.03(b) provides that assets of the Firm are to be distributed to "members in satisfaction of liabilities for distributions under Article 5 of this Operating

Agreement." The district court ruled that such liabilities were to be determined as of the date of dissolution, and the Plaintiffs have not challenged that ruling on appeal. Article 5 of the operating agreement deals only with the distribution of money actually collected, not with accounts receivables. The quarterly draws were to come from the "bonus pool," which was defined as "[t]otal money in the firm account (collections actually received in the quarter and contingency fee collections) minus firm overhead actually paid out in the quarter minus a reasonable reserve." The operating agreement made no provision for distributing earned but uncollected fees to the member who generated those fees. Because their clients paid more slowly than did the clients of the other members, receivables generated by the Plaintiffs will be distributed among all members rather than to themselves. Although that may be unfair under the circumstances, courts do not possess the roving power to rewrite contracts in order to make them more equitable, *Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 72 P.3d 877 (2003). The district court correctly interpreted the operating agreement regarding the distribution of the Firm's assets.

## C. Did the District Court Err in Failing to Rule that Perry's Attorney Fees Were a Debt of the Firm?

■ Perry contends on his appeal that the district court erred in failing to rule that the attorney fees he incurred were a debt of the Firm to be paid out of the Firm's assets. He relies upon Idaho Code § 53–644(2) which provides that the "persons winding up the business or affairs of the limited liability company may [prosecute and defend suits], in the name of, and for and on behalf of, the limited liability company." The statute only applies to the defense of suits undertaken "in the name of, and for and on behalf of, the limited liability company."

The district court denied Perry's request to have his attorney fees considered a debt of the Firm because the attorney hired by Perry never represented the Firm. That attor-

ney appeared only as counsel for Perry. Perry argues that after dissolution, he, Ipsen, Kulchak, and Munson agreed that Perry could retain counsel to represent both himself and the Firm. No attorney ever appeared in this action as counsel for the Firm, however, and no defense was undertaken in the name of, and for and on behalf of, the Firm. Therefore, the district court did not err in rejecting Perry's request to have his attorney fees held to be a debt of the Firm.[1]

Perry also argues that the Plaintiffs improperly dropped the Firm as a named defendant when they filed their amended complaint. He argues that under Rule 21 of the Idaho Rules of Civil Procedure, parties may be dropped only by order of the court, which did not happen in this case. Whether or not the Firm was improperly dropped as a named defendant does not change the fact that no attorney ever appeared on its behalf.

## D. Did the District Court Err in Failing to Award Perry Attorney Fees?

■ Perry requested an award of attorney fees under Idaho Code §§ 12–120(3) and 12–121. The district court held that § 12–120(3) did not apply, relying upon *Kelly v. Silverwood Estates*, 127 Idaho 624, 903 P.2d 1321 (1995). It did not address § 12–121. On appeal, Perry contends that he was entitled to an award of attorney fees under both statutes.

The statutes only provide for the awarding of attorney fees to a prevailing party. Because we vacate the judgment, there is at present no prevailing party. Therefore, we will not address the issue of whether attorney fees were awardable in this case under either statute.

## E. Is Perry Entitled to an Award of Attorney Fees on Appeal?

Perry requests an award of attorney fees on appeal under Idaho Code §§ 12–120(3) and 12–121. As stated above, both statutes only provide for the awarding of attorney fees to a prevailing party. Perry has prevailed in part on this appeal and has not

---

1. The Plaintiffs do not challenge on appeal the district court's ruling that the attorney fees in-

curred by Perry prior to the filing of the amended complaint were properly paid by the Firm.

prevailed in part. Assuming, without deciding, that either statute would apply in this case, he is not the prevailing party and is therefore not entitled to an award of attorney fees under either statute.

## IV. CONCLUSION

The judgment of the district court is vacated. and this case is remanded for further proceedings consistent with this opinion. No costs or attorney fees are awarded on appeal.

Chief Justice SCHROEDER and Justices TROUT, BURDICK and JONES concur.

