**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRIGHT HARVEST SWEET POTATO COMPANY, INC., <br><br> Plaintiff-Appellee, <br><br> v. <br><br> H.J. HEINZ COMPANY, L.P., <br><br> Defendant-Appellant. | No. 17-35058 <br><br> D.C. No. 1:13-cv-00296-BLW <br><br> MEMORANDUM[*] |
| BRIGHT HARVEST SWEET POTATO COMPANY, INC., <br><br> Plaintiff-Appellant, <br><br> v. <br><br> H.J. HEINZ COMPANY, L.P., <br><br> Defendant-Appellee. | No. 17-35107 <br><br> D.C. No. 1:13-cv-00296-BLW |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief Judge, Presiding

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted October 10, 2018
Seattle, Washington

Before: BLACK,[**] PAEZ, and BEA, Circuit Judges.

This case concerns a contract dispute between H.J. Heinz Co. ("Heinz") and Bright Harvest Sweet Potato Co. ("Bright Harvest"). Heinz and Bright Harvest entered into a Co-Pack Agreement ("CPA") under which Heinz promised to purchase sweet potato fries and other sweet potato products from Bright Harvest. The CPA did not specify the quantity of sweet potato fries that Heinz agreed to purchase, but the agreement stated that Heinz had a "non-binding annual planning target" of 10 million pounds of sweet potato fries per year. After Heinz reduced its orders with Bright Harvest to zero, Bright Harvest filed suit against Heinz alleging breach of contract.

There have been two trials in this case. The first trial occurred after the district court denied Heinz summary judgment on the ground that the CPA was ambiguous as to whether it was enforceable as a requirements contract. This jury found that the parties entered into a requirements contract, but that Heinz did not breach the contract. The district court then granted Bright Harvest's motion for a new trial because it found that the jury's verdict that Heinz had not breached the

---

[**] The Honorable Susan H. Black, United States Circuit Judge for the U.S. Court of Appeals for the Eleventh Circuit, sitting by designation.

contract was against the clear weight of the evidence.

During the second jury trial, Heinz moved for judgment as a matter of law under Rule 50(a). The district court denied the motion. The second jury concluded that the CPA was an enforceable requirements contract, and that Heinz breached the contract. Heinz renewed its motion for judgment as a matter of law under Rule 50(b) but the district court again denied it. Heinz timely appealed.

Heinz raises two issues in this appeal.[1] First, Heinz argues that the district court erred by denying its motion for judgment as a matter of law and submitting this case to a jury because the CPA is unambiguous and unenforceable as a requirements contract. Second, Heinz argues that the district court abused its discretion in granting Bright Harvest a new trial because the first jury's verdict was not against the clear weight of the evidence. We address each issue in turn.

We have jurisdiction under 28 U.S.C. § 1291, and we apply Idaho law to this diversity action.

1. The district court properly denied Heinz's motion for judgment as a matter of law and submitted this case to a jury. This court reviews de novo the denial of a motion for judgment as a matter of law, viewing the evidence "in the light most

---

[1] Bright Harvest withdrew its cross-appeal.

favorable to the party in whose favor the jury returned a verdict." *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802 (9th Cir. 2009).

Under Idaho Code § 28-2-201, to satisfy the Statute of Frauds, contracts for the sale of goods for more than $500 must be in writing, signed by the party to be charged, and specify the quantity of goods to be sold. But requirements and output contracts, which measure "the quantity by the output of the seller or the requirements of the buyer," are exceptions to the specific quantity requirement under the Idaho Statute of Frauds. *Id.* § 28-2-306. Here, the parties do not dispute whether the CPA was in writing or signed by the parties, but rather, since the CPA does not specify the quantity to be sold, whether the CPA is enforceable as a requirements contract.

For purposes of this appeal, we assume that a valid Idaho requirements contract exists if a buyer agrees to purchase up to a certain amount of its requirements exclusively from one seller.[2]

Applying that rule, we evaluate whether the CPA is ambiguous as to whether it is enforceable as a requirements contract. "Whether a contract is ambiguous is a question of law." *Howard v. Perry*, 106 P.3d 465, 468 (Idaho 2005). But the interpretation of an ambiguous contract is a factual issue to be decided by a jury. *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 226 P.3d 1277, 1280 (Idaho

[2]Idaho courts have held there is some "exclusivity" requirement for requirements contracts. *See Rangen, Inc. v. Valley Trout Farms, Inc.*, 658 P.2d 955, 961 (Idaho 1983) (holding the parties did not form a requirements contract because "[a]lthough [the seller] was the primary supplier of fish food to [the buyer,] the record does not show that it was [the buyer's] exclusive supplier"); *see also Harvey v. Fearless Farris Wholesale, Inc.*, 589 F.2d 451, 461 (9th Cir. 1979) (applying Idaho law) ("It is elementary that a requirements contract is one in which the buyer 'expressly or implicitly promises he will obtain his goods or services from the (seller) [e]xclusively.'"). But no Idaho court has addressed whether the "exclusivity" requirement includes requirements contracts that are partially exclusive, in that a buyer agrees to purchase a portion of its requirements exclusively from one seller. At least a majority of courts to address this issue have concluded that the exclusivity requirement is satisfied if a contract is exclusive in whole or in part. *See, e.g.*, *City of Louisville v. Rockwell Manufacturing Co.*, 482 F.2d 159, 161, 164 (6th Cir. 1973); *Hoover's Hatchery, Inc. v. Utgaard*, 447 N.W.2d 684, 687-88 (Iowa Ct. App. 1989); *see also* 1 White, Summers, & Hillman, Uniform Commercial Code § 4:20 (6th ed.) (noting requirements contracts "may be sufficiently 'exclusive'" where "a purchaser agrees to purchase exclusively from a seller up to a certain quantity"). We need not decide whether Idaho would join the majority rule because the parties agree a requirements contract is enforceable if a buyer promises to purchase up to a certain amount of its requirements exclusively from one seller.

2010). Terms of a contract are ambiguous "when there are two different reasonable interpretations or the language is nonsensical." *Id.*

Here, the CPA contains two ambiguities. First, the CPA is ambiguous as to whether Heinz agreed to purchase a certain amount of its requirements exclusively from Bright Harvest. On the one hand, there is language in Section 3 of the CPA which establishes that Heinz will buy at least a portion of its requirements exclusively from Bright Harvest: "it is the intent of the Parties that Heinz will deliver to [Bright Harvest] purchase orders for such Products as hereinafter provided, subject to the current capacity of [Bright Harvest] to produce such Products." On the other hand, there is language in Section 4 which allows Heinz to buy its requirements elsewhere: "Heinz may source the sweet potato fry products from its own factories or from any other source during the term hereof."

There are two reasonable ways to interpret this language. First, the language quoted from Section 4 could reasonably mean Heinz is allowed to source its sweet potato fries itself or from other suppliers. Alternatively, when read together, Sections 3 and 4 could mean that Heinz is able to self-manufacture or outsource its sweet potato fries only if Bright Harvest is incapable of meeting Heinz's requirements. Thus, because there are two reasonable interpretations of whether Heinz agreed to purchase at least a portion of its requirements exclusively from

6

Bright Harvest, the district court properly found that the CPA is ambiguous and submitted the case to the jury.

Second, the CPA is ambiguous as to whether Heinz's "non-binding annual planning target" to purchase 10 million pounds of sweet potato fries from Bright Harvest is a promise or an aspirational goal. Under Section 1 of the CPA, Heinz agreed that it "shall place purchase orders" in accordance with the supply chain procedures in Section 3. Section 3(i) notes that Heinz "has established a non-binding annual planning target of 10 million pounds of Products per year," and "that Heinz will deliver to [Bright Harvest] purchase orders" for the products, subject to Bright Harvest's current capacity to produce them. Heinz would provide annual forecasts for its purchase orders 12-18 months in advance, as well as 8 weeks in advance. Heinz would provide "5 weeks of firm production orders." If Heinz's actual run rate of purchase orders "does not consume 10 million pounds per year, then [Bright Harvest] may sell such capacity to other buyers or use it for its own private label production, provided that prior to doing so Heinz will have first right of refusal for any residual volume less than 10 million pounds."

Reading these terms together in the light most favorable to Bright Harvest, Heinz's "non-binding annual planning target" of 10 million pounds of sweet potato fries per year could reasonably mean that Heinz promised to purchase up to 10

million pounds of sweet potato fries from Bright Harvest each year, subject to Heinz's requirements and Bright Harvest's capacity.

Alternatively, it could be a "non-binding" aspirational goal. Under the latter interpretation, only the quantities that Heinz requested in its 5 week firm production orders would be binding, and there would be no other stated estimate because Heinz could change the quantity it planned to purchase from its long and short-term forecasts in its 5 week firm production orders. Thus, the phrase "non-binding annual planning target of 10 million pounds of [sweet potatoes] per year" is ambiguous.

Because these two ambiguities in the CPA impact whether it is enforceable as a requirements contract, the district court properly denied Heinz's motion for judgment as a matter of law and submitted this case to a jury.

2. The district court did not abuse its discretion by granting Bright Harvest a new trial. A trial court may "grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotation marks and citation omitted). We review a district court's ruling on a Rule 59(a) motion for a new trial for abuse of discretion. *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010). In so doing, "we first look to

8

whether the trial court identified and applied the correct legal rule to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc). Second, we turn to the district court's factual findings, which we will uphold unless they are "illogical, implausible, or without support in inferences that may be drawn from the record." *Id.*

First, under Idaho Code § 28-2-306(1), where parties to a requirements contract use a stated estimate, the quantity may vary, "except that no quantity unreasonably disproportionate to any stated estimate . . . may be tendered or demanded." "[G]ood faith variations from prior requirements are permitted even when the variation may be such as to result in discontinuance." *Id.* Off. Cmt. 2.

The district court properly looked to the good faith standard set forth in *Empire Gas Corp. v. American Bakeries Co.*, 840 F.2d 1333 (7th Cir. 1988) to interpret "good faith" under Idaho Code § 28-2-306.[3] In *Empire Gas*, the Seventh Circuit held that a buyer acts in good faith if it reduces its requirements for a

---

[3]Idaho courts have not interpreted the meaning of "good faith" when a buyer in a requirements contract reduces or eliminates its orders. Several of our sister circuits have adopted *Empire Gas*'s reasoning regarding whether a buyer to a requirements contract acts in bad faith when it reduces or terminates its orders. *See Tech. Assistance Int'l, Inc. v. United States*, 150 F.3d 1369, 1372 (Fed. Cir. 1998); *Brewster of Lynchburg, Inc. v. Dial Corp.*, 33 F.3d 355, 365-66 (4th Cir. 1994); *Atlantic Track & Turnout Co. v. Perini Corp.*, 989 F.2d 541, 544-45 (1st Cir. 1993).

"business reason . . . that was independent of the terms of the contract." *Id.* at 1339. A buyer acts in bad faith, however, if he "merely [has] had second thoughts about the terms of the contract and want[s] to get out of it." *Id.* at 1340-41. At a minimum, "the reduction of requirements [must] not have been motivated solely by a reassessment of the balance of advantages and disadvantages under the contract to the buyer." *Id.* at 1341.

Second, the district court's factual finding that Heinz acted in bad faith when it reduced its orders with Bright Harvest to zero was not illogical, implausible, or without support in inferences drawn from the record. Based on testimony by Heinz's co-packer manager that its decision to reduce its orders with Bright Harvest to zero was based in part on a desire to use Heinz's own factory and employees instead, and a related cost per pound comparison between Bright Harvest's and Heinz's facilities, the district court inferred that Heinz must have determined that producing sweet potato fries at its own facility would save Heinz money in the long run. Because the district court based its conclusion on inferences drawn from the record, the district court did not abuse its discretion in granting Bright Harvest a new trial.

**AFFIRMED.**