FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTO

2013 DEC 23 AM 9: 23



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GREGORY H. KIRSCH, | ) | NO. 69959-8-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CRANBERRY FINANCIAL, LLC, | ) | UNPUBLISHED OPINION |
| a Delaware limited liability company, | ) | |
| | ) | FILED: December 23, 2013 |
| Respondent. | ) | |
| | ) | |

LAU, J. — This case involves a collection action under a promissory note and personal guaranty.[1] Gregory Kirsch appeals from summary judgment dismissal finding him liable for missed payments under an installment note for the years 2006 to present and dismissing his quiet title action as moot. He contends the statute of limitations bars Cranberry Financial LLC's collection action. Because a 2004 complaint filed by Cranberry's predecessor in interest contained an express notice of intent to accelerate the balance of the note and a subsequent clerk's dismissal for want of prosecution had no effect on this notice, the six-year statute of limitations bars its collection. We reverse summary judgment in Cranberry's favor and remand with instructions to vacate the

---

[1] Note holder Cranberry Financial LLC asserted the collection action in a counterclaim to Gregory Kirsch's quiet title action.

judgment and reinstate Kirsch's quiet title action. We also award Kirsch appellate attorney fees and costs under RAP 18.1.

FACTS

### Note, Guaranty, and Deed of Trust

On August 14, 1998, Channel Marine Ltd. obtained a loan from the U.S. Small Business Association (SBA) in the principal sum of $387,800. Channel's president, Gregory Kirsch, signed a promissory note in the principal sum of $387,800.

The promissory note was later modified to increase the principal sum to $780,400.[2] The note's maturity date is August 14, 2023. Under its terms, Channel agreed to pay annual installments of $51,394—with the first payment due February 14, 2000, and successive payments due on February 14 each year until the maturity date— plus annual supplementary payments equal to 10 percent of its net income.

Kirsch personally guaranteed Channel's obligations under the note.[3] At the same time, Kirsch granted the SBA a deed of trust on his personal residence located at 4365 Y Road in Bellingham as security for the note. By successive assignment, Cranberry succeeded to and currently owns and holds all of the SBA's right, title, and interest in the note, guaranty, and deed of trust.

### Default and 2004 Lawsuit

Channel made its first and only payment under the note on February 14, 2000, leaving unpaid the annual installments for the years 2001 to the present.

---

[2] We refer to the promissory note and the modification of promissory note collectively as the "note."

[3] We refer to the guaranty and its subsequent amendment collectively as the "guaranty."

On August 5, 2004, Cranberry's predecessor Capital Crossing Bank[4] (CCB) sued Channel and Kirsch for breach of the note and guaranty and foreclosure of the deed of trust. Relevant to this case, the complaint stated:

> Election to Accelerate. CCB has elected to declare the entire principal sum and all accrued interest on the Note due and payable. Under the Note, all past due installments of interest, late charges, default rate interest, attorneys' fees, advisor's fees and expenses incurred by CCB in connection with the default shall be added to the principal balance, and the principal balance shall bear interest at the Note rate of 4 percent on all amounts due.

CCB alleged Channel owed the unpaid principal balance, plus interest, and stated it was "entitled to a money judgment against [Channel] for all amounts due and owing, including attorneys' fees and costs, under the Note." CCB requested (1) "judgment against [Channel and Kirsch] . . . in the principal sum of $748,343.63, together with accrued unpaid interest of $133,218.27 as of August 4, 2004"; (2) that the deed of trust be foreclosed and the real property sold and its proceeds applied toward payment of the judgment; and (3) that the Bank be awarded a deficiency judgment against Channel and Kirsch to the extent the judgment exceeded the foreclosure sale proceeds.

Kirsch answered the complaint and denied any payments were due. Regarding CCB's "Election to Accelerate," Kirsch answered, "Defendant lacks knowledge and therefore neither admits or denies." Kirsch pleaded several affirmative defenses.

In April 2009, after nearly five years of inactivity, the 2004 lawsuit was dismissed without prejudice on the court clerk's motion for want of prosecution under CR 41.

---

[4] Capital Crossing Bank was successor in interest to SBA and predecessor in interest to Cranberry in the note, guaranty, and deed of trust.

2012 Lawsuit

In April 2012, Kirsch filed a complaint against Cranberry, seeking a declaratory judgment to quiet title to the 4365 Y Road property incident to his marital divorce proceedings.[5] Cranberry filed its answer, affirmative defenses, and a counterclaim against Kirsch for breach of the guaranty. In its counterclaim, Cranberry alleged that (1) Channel failed to pay installments under the note from 2001 to present; (2) Cranberry succeeded to and owns all of the SBA's right, title, and interest in the note; and (3) "Cranberry Financial has elected to declare the entire principal sum and all accrued interest on the Note due and payable."

On May 17, 2012, Kirsch moved for summary judgment, arguing that RCW 4.16.040's[6] six-year statute of limitations barred Cranberry from enforcing the note against Channel or Kirsch. Kirsch also sought an order "quieting title against the lien of the deed of trust pursuant to RCW 7.28.300."[7] CP 30-37. He claimed:

> [S]ums due under the subject note were accelerated by virtue of the lawsuit in 2004. As such there was a demand for the entire sum owing and payments due under the note were no longer contemplated. Consequently, even if there were an argument that an installment note has a different treatment with regard to application of the statute of limitations than some other written promise to pay,

---

[5] Kirsch originally filed his complaint against CCB in January 2012, but Cranberry had succeeded to CCB's interest by that time. By stipulation, CCB was dismissed from the action and Cranberry was substituted as a defendant.

[6] RCW 4.16.040 requires actions on written contracts to be brought within six years after accrual.

[7] "When an action for foreclosure on a deed of trust is barred by the statute of limitations, RCW 7.28.300 authorizes an action to quiet title." Westar Funding, Inc. v. Sorrels, 157 Wn. App. 777, 785, 239 P.3d 1109 (2010).

that argument is moot because the note ceased being the basis for collection of the obligation when the sums were accelerated.

Cranberry argued both at the summary judgment hearing and in its opposition briefing that the annual installment payments for the years 2006 to present were not barred under RCW 4.16.040 because the statute of limitations runs separately against each installment at the time it becomes due.[8] The court granted in part and denied in part Kirsch's motion. The court ruled that the annual installment payments under the note for the years 2001 to 2005 were barred by RCW 4.16.040's six-year statute of limitations. But the court also ruled that RCW 4.16.040 did not bar enforcement of installment payments under the note for the years 2006 to present. Accordingly, the court denied Kirsch's quiet title claim.

Kirsch moved for reconsideration, again arguing the Note was accelerated. Cranberry argued in opposition that the note's acceleration clause was permissive and no evidence indicated that Cranberry or its predecessors ever exercised the acceleration option. After oral argument, the court denied Kirsch's motion, concluding that the note's acceleration clause was permissive and Cranberry had not accelerated the debt under the clause. In its oral ruling, the court indicated:

> I think that the initial lawsuit did not effectively accelerate the note, because the lawsuit was dismissed and not pursued. . . . [S]ince it has not been accelerated, then the Court is willing to determine that any payments that have not, that are not more than six years past due are still part of this lawsuit.

RP (Aug. 27, 2012) at 12.

---

[8] Cranberry conceded that the annual installment payments due under the note for the years 2001-2005 were barred under RCW 4.16.040's six-year statute of limitations.

In January 2013, Cranberry moved for summary judgment against Kirsch requesting (1) judgment against Kirsch on the breach of guaranty counterclaim, (2) a determination that Cranberry's deed of trust is enforceable, and (3) dismissal of Kirsch's claims as moot. Kirsch opposed the motion and "renew[ed] [his] prior motion for summary judgment based on the statute of limitation, equitable estoppel, and laches." Kirsch argued, "Acceleration of the debt on or prior to the 2004 lawsuit caused the cause of action for the entire balance to accrue, and bars the present collections suit."

Kirsch submitted a "second declaration" supporting his argument. He described Channel's default and explained it resulted in acceleration of the SBA loan:

13. The economic disaster, the SBA's improper conduct, and a complete lack of working capital caused Channel Marine to miss the February of 2000 annual loan payment. The SBA responded to the missed payment by declaring the loan delinquent and accelerating the debt in April of 2001 in accordance with the terms of the Note.

14. Extensive correspondence between the parties, both before and after acceleration, discussed the reasons for the default, and outlined Channel Marine's claims against the SBA. The correspondence included demands by the SBA for immediate payment of the entire balance.

. . .

21. I also received a "demand" letter from [SBA successor] Capital Crossing in which it stated that the debt had been accelerated and the entire amount, including principal and interest, was immediately due.

22. In 2004 Capital Crossing, consistent with its demand letter, sued Channel Marine, my wife and I, and others. . . . In the complaint Capital again alleged that it had elected to accelerate the note and "to declare the entire principal sum and all accrued interest on the Note due and payable."

. . .

27. We engaged in discovery, litigated, and discussed the issues from before the filing in August of 2004 until Capital Crossing chose not to pursue the collection in about 2005. Counsel for Capital Crossing withdrew in February of 2008. Counsel for Channel Marine also withdrew. A dismissal for want of prosecution was entered in April of 2009.

28. I relied on the decision by Capital Crossing to abandon its claims. My records related to the SBA loan and the litigation, were no longer of importance and were discarded or lost. Witnesses would not be very difficult or impossible to locate, and memories (including mine) have certainly dimmed with time.

(Emphasis added.)

Cranberry moved unsuccessfully to strike Kirsch's second declaration as untimely and irrelevant. The trial court considered Kirsch's second declaration. The court granted Cranberry's summary judgment motion in all respects, entered judgment against Kirsch for $785,900.42, plus costs and expenses, and dismissed Kirsch's claims as moot. Kirsch appeals.

## ANALYSIS

### Standard of Review

We review summary judgment de novo and consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 501, 115 P.3d 262 (2005). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Bulman v. Safeway, Inc., 144 Wn.2d 335, 351, 27 P.3d 1172 (2001). The nonmoving party cannot rely solely on the allegations in his or her pleadings, on speculation, or on argumentative assertions that unresolved factual issues remain. White v. State, 131 Wn.2d 1, 9, 929 P.2d 396 (1997). Such assertions must be supported by evidence. Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986).

### Statute of Limitations

Kirsch contends that, at the latest, Cranberry or its predecessors accelerated the remaining debt in 2004 and, thus, the statute of limitations barred all amounts due under the Note. Cranberry responds that no acceleration occurred and, thus, the statute of limitations bars only those payments due before 2006.

Generally, actions based on written contracts must be commenced within six years after breach. RCW 4.16.040. The general rule for debts payable by installment provides, "A separate cause of action arises on each installment, and the statute of limitations runs separately against each . . . ." 31 RICHARD A. LORD, WILLISTON ON CONTRACTS § 79:17, at 338 (4th ed. 2004); see also 25 DAVID K. DEWOLF, KELLER W. ALLEN & DARLENE BARRIER CARUSO, WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 16:20, at 196 (2012-13 Supp.) ("Where a contract calls for payment of an obligation by installments, the statute of limitations begins to run for each installment at the time such payment is due"); Hassler v. Account Brokers of Larimer County, Inc., 274 P.3d 547, 553 (Colo. 2012) (same); Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 208-09, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997) (same).[9] But if an obligation that is to be repaid in installments is accelerated— either automatically by the terms of the agreement or by the election of the creditor pursuant to an optional acceleration clause—the entire remaining balance of the loan becomes due immediately and the statute of limitations is triggered for all installments that had not previously become due. 31 Richard A. Lord, supra, § 79:17, at 338; §

---

[9] Kirsch contests this rule, arguing that Cranberry cites distinguishable family law cases for the proposition that the statute of limitations runs against each installment separately. Though some of Cranberry's cited cases are family law cases, they describe a general proposition of contract law applying to all contracts in which installment payments are due. Further, some of those family law cases cite 82 A.L.R. 316 (1931), which addresses in general terms, "[w]hen Statute of Limitations begins to run against an action to recover upon contract payable in instal[l]ments" and describes the general rule: "The general rule in such a case is similar to the general rule herewith noted in the case of contract obligations, it having been held that the Statute of Limitations begins to run from the expiration of the period fixed for the payment of each instal[l]ment as it becomes due, for the part then payable." See Herzog v. Herzog, 23 Wn.2d 382, 388, 161 P.2d 142 (1945).

79:18, at 347-50; 12 Am.Jur.2d, Bills & Notes § 581 (same); Bay Area, 522 U.S. at 208-09 (same). The statute of limitations commences upon maturity of a note. A.A.C. Corp. v. Reed, 73 Wn.2d 612, 615, 440 P.2d 465 (1968).

The Uniform Commercial Code (UCC) similarly provides that a cause of action for collection of the entire balance of a note accrues immediately upon acceleration:

> Statute of Limitations
> (a) Except as provided in subsection (e), an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date.

RCW 62A.3-118.

Kirsch and Cranberry agree that the Note contains an optional acceleration clause that the creditor may unilaterally invoke following default. It provides in relevant part: "Holder is authorized to declare all or any part of the Indebtedness immediately due and payable upon the happening of any of the following events: (1) Failure to pay any part of the Indebtedness when due." The relevant inquiry for determining when the present action accrued is whether Cranberry's predecessor exercised its option to accelerate Kirsch's debt.

In the case of an acceleration provision exercisable at the option of the creditor:

> Some affirmative action is required, some action by which the [creditor] makes known to the [debtor] that he intends to declare the whole debt due. This exercise of the option may, of course, take different forms. It may be exercised by giving the [debtor] formal notice to the effect that the whole debt is declared to be due, or by the commencement of an action to recover the debt, or perhaps by any means by which it is clearly brought home to the [debtor] of the note that the option has been exercised . . . .

_Weinberg v. Naher_, 51 Wn. 591, 594, 99 P. 736 (1909) (emphasis added).[10] "Under _Weinberg_, acceleration must be made in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised his right to accelerate the payment date." _Glassmaker v. Ricard_, 23 Wn. App. 35, 38, 593 P.2d 179 (1979). Other jurisdictions agree that the creditor must perform some "'clear, unequivocal affirmative act evidencing his intention to take advantage of the acceleration provision.'" _Hassler_, 274 P.3d at 553 (quoting _Moss v. McDonald_, 772 P.2d 626, 628 (Colo. App. 1988)). This principle is consistent with that adopted by a majority of other states. _See, e.g._, 11 AM.JUR.2d, BILLS AND NOTES § 169; _United States v. Feterl_, 849 F.2d 354, 357 (8th Cir. 1988); _KIXX, Inc. v. Stallion Music, Inc._, 610 P.2d 1385, 1388-89 (Utah 1980); _State Sec. Sav. Co. v. Pelster_, 207 Neb. 158, 296 N.W.2d 702, 706 (1980). These jurisdictions require that the "exercise of the option . . . be made in a manner so clear and unequivocal as to leave no doubt as to the holder's intention and to apprise the maker effectively of the fact that the option has been exercised." 5 A.L.R.2d 968, § 4[a].

The parties here disagree on two main issues: (1) whether Cranberry's predecessor, CCB, exercised the option to accelerate in 2004 when it filed a complaint against Channel and Kirsch and (2) if it did exercise that option, whether the court

---

[10] In _Glassmaker_, 23 Wn. App. at 38, Division Three of this court noted: "Since the adoption of CR 3 in 1967, an action is commenced by service or filing of the summons and complaint. Here, plaintiffs had merely filed their summons and complaint at the time the delinquent payment was accepted by the bank. Thus, the actual notice requirement of _Weinberg_ and _Hartge_ [v. _Capeloto_, 136 Wash. 538, 241 P. 5 (1925)] was not satisfied. Commencement of an action under the old law was effective notice to the maker." Here, there is no dispute the action was commenced by serving and filing the summons and complaint. Thus, the 2004 lawsuit provided actual notice of the acceleration.

clerk's dismissal of the 2004 complaint for want of prosecution under CR 41 nullified the acceleration's effect for purposes of the statute of limitations.[11]

First, there is no genuine fact dispute that Cranberry's predecessor CCB unambiguously exercised its option to accelerate in 2004. As the above cases establish, acceleration occurs upon notice to the debtor that the creditor intends to declare the entire sum due and payable. CCB filed a complaint in which it declared that it had "elected to declare the entire principal sum and all accrued interest on the Note due and payable." Kirsch's answer to this acceleration election stated "Defendant lacks knowledge and therefore neither admits or denies."[12] CCB provided clear notice to

---

[11] The trial court below apparently assumed the 2004 lawsuit accelerated the debt but ruled that the subsequent dismissal reversed the acceleration. See Report of Proceedings (RP) (June 22, 2012) at 15 ("The [2004] lawsuit doesn't toll the statute of limitations, but it also once dismissed doesn't stand for the proposition . . . that the previous determination to call the note due still stands, because once it is dismissed, then nothing that happened in that lawsuit has any validity."); RP (Aug. 27, 2012) at 10-12 ("If the party brings a lawsuit, and as part of that lawsuit says we're entitled under the note to receive full payment which is essentially an acceleration . . . I would say that's probably evidence of their intent to do so. However, if the lawsuit is dismissed and not pursued, then I don't think that is effective . . . . I think that the initial [2004] lawsuit did not effectively accelerate the note, because the lawsuit was dismissed and not pursued."); RP (Feb. 8, 2013) at 16 ("Cases were cited to this Court [at the first summary judgment proceeding], and the Court determined that the abandonment of [the 2004 case] meant that that acceleration, that was wiped out at that point in time"); RP (Feb. 8, 2013) at 22 ("So any acceleration that occurred as a result of [the 2004] cause of action evaporated when the cause of action ended."); RP (Feb. 8, 2013) at 23 ("[W]hen that [2004] lawsuit was abandoned, then there is no acceleration in effect at that time."), RP (Feb. 8, 2013) at 25 ("[W]hen a lawsuit is allowed to go defunct, then that, everything that underlies it is gone, and so . . . that means the acceleration that was created by the filing of that [2004] lawsuit also is no longer in effect."), RP (Feb. 8, 2013) at 32 (in answering Kirsch's counsel's question "are you saying if [Cranberry's predecessors] made a demand for full payment prior to 2004, it's meaningless because they filed a 2004 lawsuit?", court answered, "Yes, it expired in that lawsuit.") (all emphasis added).

[12] Cranberry repeatedly asserts that "In his Answer, Kirsch denied the allegation of acceleration under the Note." Resp't's Br. at 6. Kirsch neither admitted nor denied

Kirsch of its intent to accelerate the debt. Thus, CCB took "affirmative action . . . by which the [creditor] makes known to the [debtor] that he intends to declare the whole debt due." Weinberg, 51 Wn. at 594. Cranberry cites no contrary authority. CCB's affirmative action accelerated the debt.[13] We conclude that no material issues of fact exist over whether Cranberry's predecessors exercised their option to accelerate the debt.

We next address whether dismissal of the 2004 complaint for want of prosecution nullified the acceleration for purposes of the statute of limitations. CR 41(b)(2)(A) authorizes involuntary dismissal on the clerk's motion:

> In all civil cases in which no action of record has occurred during the previous 12 months, the clerk of the superior court shall notify the attorneys of record by mail that the court will dismiss the case for want of prosecution unless, within 30 days following the mailing of such notice, a party takes action of record or files a status report with the court indicating the reason for inactivity and projecting future activity and a case completion date. If the court does not receive such a status report, it shall, on motion of the clerk, dismiss the case without prejudice and without cost to either party.

"'[I]n ruling on a motion to dismiss pursuant to CR 41 [for want of prosecution], the trial court may not generally consider the merits of the case nor the hardship which application of the rule may bring.'" Foss Maritime Co. v. City of Seattle, 107 Wn. App.

---

CCB's "election to accelerate." And regardless of how Kirsch responded to CCB's election to accelerate, the complaint clearly gave Kirsch notice of CCB's intent to do so. This triggered acceleration.

[13] We note that the trial court considered evidence indicating the debt was accelerated even earlier than 2004. Kirsch's second declaration, quoted above, indicates that the SBA sent Kirsch a demand letter in 2001 calling the entire debt due and that CCB sent Kirsch a similar demand letter after succeeding to the SBA's interest in the note, guaranty, and deed of trust. This declaration was before the court at oral argument on Cranberry's summary judgment motion, and Kirsch's statements regarding the earlier demand letters were unrebutted. See RP (Feb. 8, 2013) at 3-36. However, even if we use the later 2004 date as the acceleration date, the statute of limitations still bars collection of the debt as discussed below.

669, 675, 27 P.3d 1228 (2001) (quoting Snohomish County v. Thorp Meats, 110 Wn.2d 163, 168, 750 P.2d 1251 (1988)). "The primary function of an involuntary dismissal by a clerk's motion is to clear the clerk's record of inactive cases." Vaughn v. Chung, 119 Wn.2d 273, 277, 830 P.2d 668 (1992). "It is an administrative provision that creates a 'relatively simple means by which the court system itself, on its own volition, may purge its files of dormant cases.'" Vaughn, 119 Wn.2d at 277 (quoting Miller v. Patterson, 45 Wn. App. 450, 455, 725 P.2d 1016 (1986)).

When a case is dismissed involuntarily without prejudice under CR 41, refiling is permitted so long as the statute of limitations has not expired. The time limit for refiling is computed as if the first case had never been filed and is not tolled by the commencement of the first action. Fittro v. Alcombrack, 23 Wn. App. 178, 180, 596 P.2d 665 (1979).

As discussed above, the 2004 lawsuit was dismissed without prejudice on the clerk's motion for want of prosecution. The dismissal resolved no substantive issues. Cranberry relies on CR 41 and cases interpreting it to argue that CCB's notice of acceleration should be ignored when the case was dismissed for want of prosecution. See Spice v. Pierce County, 149 Wn. App. 461, 204 P.3d 254 (2009); Wachovia SBA Lending v. Kraft, 138 Wn. App. 854, 158 P.3d 1271 (2007); Beckman v. Wilcox, 96 Wn. App. 355, 979 P.2d 890 (1999); Steinberg v. Seattle-First Nat'l Bank, 66 Wn. App. 402, 832 P.2d 124 (1992); Cork Insulation Sales Co. v. Torgeson, 54 Wn. App. 702, 775 P.2d 970 (1989); Logan v. North-West Ins. Co., 45 Wn. App. 95, 724 P.2d 1059 (1986); Fittro, 23 Wn. App. 178; Gould v. Bird & Sons, Inc., 5 Wn. App. 59, 485 P.2d 458 (1971). We disagree. None of those cases control in the context of knowledge or

notice between two parties and the unique circumstances present in this case. Cranberry cites no authority for its argument that a mere administrative dismissal disestablishes the fact of notice conveyed from one party to another.[14] Our observation in Lunsford v. Saberhagen Holdings, Inc., 139 Wn. App. 334, 343, 160 P.3d 1089 (2007), applies here: "Once rung, the bell is not unrung."[15] We are unpersuaded by Cranberry's reliance on the CR 41 dismissal.

Because Cranberry's predecessors accelerated the debt and the 2004 lawsuit's dismissal had no effect on the notice given to Kirsch, Cranberry or its predecessors were required to file suit "within six years after the accelerated due date . . . ." RCW 62A.3-118. Cranberry failed to do so. We conclude the six-year statute of limitations bars Cranberry's collection of all portions of the debt at issue here.[16]

Attorney Fees

Both parties request an award of attorney fees and costs under RAP 18.1 and the Note's attorney fees and costs provision.[17] Under the terms of the Note and upon

---

[14] We reemphasize that mandatory involuntary dismissal under CR 41(b)(2)(A) benefits the court's docket management. It is not intended to confer any tactical or substantive advantage to either party.

[15] Kirsch's second declaration quoted above makes clear that Cranberry's predecessors in interest treated the debt as having been accelerated. Its present claim is unpersuasive based on this unrebutted evidence.

[16] Given our disposition, we need not address Kirsch's remaining arguments.

[17] The note provides that the debtor (here, Channel/Kirsch) shall pay the note holder's (here, Cranberry's) expenses of any nature, including reasonable attorney fees and costs, incurred to enforce the note's provisions. Similarly, Kirsch, as the prevailing party on appeal, is entitled to reasonable attorney fees and costs under the note's attorney fees and costs provision. See RCW 4.84.330.

compliance with RAP 18.1, Kirsch is entitled to reasonable attorney fees and costs on appeal.

## CONCLUSION

For the reasons discussed above, we reverse the summary judgment order in favor of Cranberry and remand with instructions to vacate the judgment and reinstate Kirsch's quiet title action. We also award Kirsch reasonable attorney fees and costs on appeal upon his compliance with RAP 18.1.

WE CONCUR: