[No. 7463.   Decided February 8, 1909.]

A. WEINBERG, *Respondent*, v. G. NAHER *et al.*, *Appellants*.[1]

MORTGAGES—MATURITY OF DEBT—OPTION TO DECLARE WHOLE DEBT
DUE—WAIVER—TENDER OF OVERDUE PAYMENT.   An option in a mort-
gage note to declare the whole debt due for default in payment of
interest cannot be exercised after lawful tender of an overdue in-
terest installment.

LIMITATION OF ACTIONS—TIME—ACCRUAL OF RIGHT OF ACTION.   Fail-
ure to pay an installment of interest, under a clause authorizing the
payee to declare the whole debt due, does not start the running of
the statute of limitations.

SAME—EXERCISE OF OPTION—NOTICE—SUFFICIENCY.   Letters stat-
ing that a loan will be called in if the mortgagor does not in a
week further secure the loan by an insurance policy, and that the
mortgagee will insist on the policy or call in the loan, do not amount
to an election to declare the whole sum due on account of default in
the payment of interest.

TENDER—CONDITIONS—WAIVER OF OBJECTIONS.   Where at the time
a tender of interest was made through a payment to a bank, coupled
with a request that the mortgagee call and receive it, the mortgagee,
in writing, gave as his only reason for refusing the tender, that the
interest was past due, he cannot afterwards object that the tender
was not lawful because coupled with a condition and not made to
him personally.

TENDER—NECESSITY.   A formal tender is excused where it ap-
pears that it would be refused.

Appeal from a judgment of the superior court for King
county, Morris, J., entered January 28, 1908, upon findings
in favor of the plaintiff, in an action to foreclose a mortgage.
Reversed.

*Fred H. Peterson* and *H. C. Force*, for appellants.

*Richard Saxe Jones* and *Jas. A. Snoddy*, for respondent.

FULLERTON, J.—On January 16, 1907, the respondent
loaned to the appellants the sum of $12,000, to become due
three years after date, with interest at six per cent per an-

[1]Reported in 99 Pac. 736.

num, payable semi-annually. The note taken to evidence the
loan provided that, in case the interest was not paid when
due, the whole sum of both principal and interest should be-
come immediately due, at the option of the holder of the note.
At the time of the making and delivery of the note, and to
secure the payment thereof according to its terms and con-
ditions, the appellants also executed and delivered to the re-
spondent a mortgage covering real property situated in the
city of Seattle. The mortgage contained, among others, the
following conditions:

"But in case default be made in the payment of the prin-
cipal or interest of said promissory note, or any part thereof,
when the same shall become due and payable, according to the
terms and conditions thereof, then the said party of the sec-
ond part   .   .   .   are hereby empowered to sell the said
premises   .   .   .   and out of the money arising from such
sale to retain the whole of said principal and interest, whether
the same shall be then due or not, together with the costs and
charges of making such sale   .   .   .."

By the terms of the note, an installment of interest amount-
ing to $360 became due on July 16, 1907, which was not paid.
This is an action brought by the respondent to foreclose the
mortgage because of the nonpayment of this interest install-
ment.   There is no serious controversy over the facts.   Mr.
Naher, one of the appellants, testified that, on the day pre-
ceding the maturity of the interest payment, he called up the
respondent by telephone, telling him that the interest on the
note fell due the next day, and inquired when he could meet
him personally for the purpose of paying it; that the re-
spondent stated in answer that he might mail a check for the
amount; that he again said that he wanted to see him per-
sonally as he wanted the payment indorsed on the note; that
to this the respondent repeated his directions to send the
check by mail. That on the next day he went to the respond-
ent's place of residence to pay him the money, but was unable
to find him; and between that time and July 30, he made

repeated inquiries for him at his place of residence, at one of which times he left his telephone number with the request that Mr. Weinberg call him up, but he was unable to find him at any of these times, and did not receive any telephone call from him, and did not hear from him until the 30th of the month. The record further shows that on the 30th of July the respondent wrote Mr. Naher the following letter:

"Seattle, July 30, '07.

"Mr. G. Naher, Seattle, Wash.

"D Sir: I hereby notify you that unless you will before the end of this week make insurance policy payable to me shall call on you for principal & interest at once. Yours truly, A. Weinberg."

To this letter some response was made which is not shown by the record, and on August 1, 1907, the respondent wrote again as follows:

"Seattle, August 1, 1907.

"Mr. G. Naher, 702 17th St., Seattle.

"Dr. Sir: Yours to hand. You well know the note & mort. were made to me and are in my possession at all times & as said before I will insist on insurance policy or call entire loan & interest due. Yours respf. A. Weinberg."

August 5, 1907, Mr. Naher left the amount of the interest with the Puget Sound National Bank of Seattle, who notified Mr. Weinberg of the deposit of the money by letter, in which letter he was requested to call and bring the note that the money might be handed him and the payment indorsed on the note. The respondent responded to this notice by writing thereon the following: "Interest on note past due therefore refuse to accept same. A. Weinberg."

Two days following, the respondent sent a formal letter to the appellants electing to exercise his option to declare the whole sum of principal and interest due for the failure to pay the installment of July 16, 1907. Later on he placed the notes and mortgage in the hands of his attorney for collection, who demanded payment of the entire debt. Answering

38—51 WASH.

this demand, the appellants tendered the interest, which was refused. This foreclosure proceeding was then begun, whereupon the appellants paid the interest into court at the time they filed their answer. At the trial, after the foregoing facts had been shown, the court held that the respondent had rightfully exercised the option given him in the mortgage note to declare the whole sum due and payable, and entered a decree foreclosing the mortgage. This appeal is from the judgment so entered.

The principal questions suggested by the record, and debated by the parties, are two, namely: whether a lawful tender of the interest in default by the appellants to the respondent prior to the time the respondent elected to declare the whole sum of principal and interest due and payable would cut off the right of the respondent to declare the entire debt due payable; and whether there was in fact such a tender.

Taking up these questions in their order, we are clear that, on a contract of the character in question here, a payment or a tender of payment of the overdue interest before the option to declare the whole debt due has been exercised cuts off the right to exercise the option. This must follow, we think, from the nature of the contract. The debt does not become due on the mere default in the interest payment. Some affirmative action is required, some action by which the holder of the note makes known to the payors that he intends to declare the whole debt due. This exercise of the option may of course take different forms. It may be exercised by giving the payors formal notice to the effect that the whole debt is declared to be due, or by the commencement of an action to recover the debt, or perhaps by any means by which it is clearly brought home to the payors of the note that the option has been exercised before the interest is paid or tendered. After a tender or payment there is no interest due, and the right to exercise the option has its foundation in the fact that interest remains due and unpaid.

But it is said that the holder of the note has a reasonable

time in which to exercise the option after default is made, and the right cannot be cut off by payment or tender of payment before this reasonable time expires. This, however, is not what is meant by the authorities when they speak of a reasonable time in which to exercise the option. It was formerly thought that, inasmuch as the option was in the nature of a forfeiture, and that as forfeitures were not favored, the right must be exercised at once else it was deemed waived, and this even though the default continued. But later this was deemed too harsh a rule, and a reasonable time was given, where the default continued, in which the option could be exercised, but it was not meant to be asserted that the option outlived the default.

Our attention has not been called to many cases where this precise question has been discussed, but a case in point is *Sykes v. Arne* (Cal.), 47 Pac. 868. That was a suit brought to foreclose a chattel mortgage. The mortgage debt was payable in installments, and a clause in the mortgage gave the mortgagee the right on the mortgagor's default in the payment of any installment as it fell due to declare the whole debt due and payable. Default in the payment of an installment was made, but before the mortgagee elected to proceed, a tender was made of all that was actually due. The court held that the tender cut off the mortgagee's right to exercise the option, holding that when "the entire debt may be treated as due upon any default in payment of interest or other installment, at the election of the mortgagee or trustee, the whole debt is nevertheless not due until the election has been exercised."

In *Ver Planck v. Godfrey*, 42 App. Div. 16, 58 N. Y. S. 784, the mortgage provided that the whole of the principal debt should become due at the option of the mortgagee on "default in the payment of any tax or assessment for sixty days." The taxes on the mortgaged premises were allowed to remain delinquent for more than sixty days, but were paid before the mortgagee began foreclosure proceedings, but

after notice sent the mortgagor that she had elected to exercise her option. The court held that the payment was a defense to the foreclosure proceedings. The mortgagor had deposited with the agent of the mortgagee money which she claimed was for the purpose of paying these taxes, and this fact may have influenced somewhat the holding of the court, but the case upholds the principle that a tender of payment before an actual exercise of the option cuts off the right of election. To the same effect is *Lowenstein v. Phelan*, 17 Neb. 429, 22 N. W. 561.

That such a clause in a mortgage and a breach thereof does not make the mortgage due for the purpose of starting the running of the statute of limitations has been repeatedly held. 13 Am. & Eng. Ency. Law (2d ed.), 793, note 1. Such is the rule in this state. *First Nat. Bank v. Parker*, 28 Wash. 234, 68 Pac. 756, 92 Am. St. 828; *White v. Krutz*, 37 Wash. 34, 79 Pac. 495. Another case in point from this state on the principle involved is *Zeimantz v. Blake*, 39 Wash. 6, 80 Pac. 822. In that case the plaintiffs sued to enforce the specific performance of a contract to convey land. The contract on which the suit was based provided for the payment of the purchase price in installments, and time was made the essence of the contract. These installments were not all paid as they fell due, but those owing were tendered before the final payment fell due and before any forfeiture was declared, and were paid into court on the commencement of the suit. It was urged that this did not save the forfeiture; that in order to recover, the plaintiffs must prove that all of the payments due under the contract up to the time of the final tender were paid or tendered at the time they fell due, as time was made of the essence of the contract, and a forfeiture occurred as of course on default of any payment. Answering this objection the court said:

"We cannot so construe the contract. This clause in the contract did not, of itself, forfeit the contract in equity simply because a payment was not made immediately on its falling

due. Undoubtedly the party agreeing to make the sale could declare a forfeiture, and cut off the right of the other party to make the payments, but it required some affirmative action on his part. If he remained passive until the other party made tender of payment, he was obligated to accept it and to perform his part of the contract."

The only case cited to us which directly holds the contrary of the conclusion reached by us is *Swearingen v. Lahner*, 93 Iowa 147, 61 N. W. 431, 57 Am. St. 261, 26 L. R. A. 765; but as we believe it contrary to the better reason as well as the weight of authority, we must decline to follow it.

As to the second question we are of the opinion that there was a tender of the overdue interest prior to the time the mortgagee elected to exercise the option given him to declare the whole sum of principal and interest due. The letters of June 30 and August 1, 1907, do not amount to such an election. The language of the first is that the loan will be called in if the mortgagor does not before the end of the week make the insurance policy on the property payable to the mortgagee; and the second is that the mortgagee will insist on an insurance policy or call in the loan. These letters but threaten an exercise of the option, and are evidently made for the purpose of procuring additional security for the loan. They do not amount to an actual call of the loan, or to an exercise of the option. That this is their meaning is evidenced by the subsequent act of the mortgagee. On the sixth day after mailing the last letter he sent a letter to the mortgagor in which he gave notice that he had elected to declare the whole debt due and payable. If he had thought that his earlier letters amounted to such a declaration he would not have felt the necessity of sending the later one. But prior to the time of the sending of the later notice, the mortgagors tendered the interest payment through the bank. It is objected to this tender that it was not sufficiently formal; that the mortgagors did not seek out the mortgagee, produce the money and make an actual offer of it to him; that the letter was nothing more

than a mere offer to pay if the mortgagee would call at the bank for it; and that the offer as made was coupled with a condition which the mortgagors had no right to exact. If these objections had been made at the time of the tender, and not overcome by a more formal tender, or if the refusal to accept had been made without giving a reason, doubtless the tender would have been insufficient. But the rejection was not made for any of the reasons here given. The reason for the refusal to accept the money was stated in writing and was that the interest was past due. This being the reason given, and the only reason given, the mortgagee is bound by it, and the right to refuse the tender must be tested by the sufficiency of that reason. *Zeimantz v. Blake, supra.* In the latter case this language was used:

"It is complained in this connection that the tenders were insufficient, but we think the appellant is estopped to complain of this. Had he refused to perform the contract because he had not been tendered payment in full, and appeared in the action and defended on that ground, he probably could have succeeded in defeating a recovery of costs against him, if his contention should have proven true, though not the performance of the contract. But the appellant did not object to the tender when made on the ground that enough was not tendered him, nor did he defend this action on that ground. He denied any liability whatsoever under the contract, and it is on that ground that he must succeed now, if he succeeds at all."

That the reason given for refusing to accept the interest was insufficient needs no further demonstration.

A formal tender was unnecessary for a further reason. The answer to the note from the bank makes it manifest that a formal tender would have been refused. This by all of the modern cases is a sufficient reason for not making a tender, on the principle that the law does not require one to do vain or useless things. *Sanford v. Royal Ins. Co.*, 11 Wash. 653, 40 Pac. 609; 28 Am. & Eng. Ency. Law (2d ed.), p. 5.

We conclude, therefore, that the court was in error on al-

lowing a foreclosure of the mortgage. The judgment appealed from will be reversed, and the cause remanded with instructions to enter a judgment in favor of the defendants to the effect that the plaintiff take nothing by his action, and that the defendants have judgment for costs against him.

DUNBAR, MOUNT, and CROW, JJ., concur.

RUDKIN, C. J., CHADWICK, and GOSE, JJ., took no part.