## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 43165

| | | |
|---|---|---|
| IN THE MATTER OF JOHN DOE I, A Minor Child. | ) ) | |
| -------------------------------------------------------- | ) | |
| JOHN DOE (2015-05) and JANE DOE, | ) ) | Boise, September 2015 Term |
| Petitioners-Respondents-Cross Appellants, | ) ) ) | 2016 Opinion No. 9 |
| | ) | Filed: February 1, 2016 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| SHOSHONE-BANNOCK TRIBES, | ) ) | |
| Intervenor-Appellant-Cross Respondent, | ) ) ) | |
| and | ) ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE and ATTORNEY FOR THE MINOR CHILD, | ) ) ) ) ) | |
| Respondents. | ) ) ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Ralph L. Savage, Magistrate Judge.

The orders of the trial court are <u>affirmed</u> in part and <u>reversed</u> in part. No costs or attorney fees are awarded on appeal.

Office of Tribal Attorneys, Shoshone-Bannock Tribes, Fort Hall, attorneys for appellant. Brandelle Whitworth argued.

Justin R. Seamons, Idaho Falls, attorney for respondents.

Gaffney Law Office, Idaho Falls, attorney for respondent Minor Child. Laurie Gaffney argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for respondent Idaho Department of Health and Welfare. Mark Withers argued.

_____

W. JONES, Justice

# I. NATURE OF THE CASE

This case arises out of Appellant's, the Shoshone-Bannock Tribes (Tribes), intervention in the adoption proceedings of a minor child (Child). While the adoption itself is not at issue on appeal, disputes that arose during the adoption proceedings are. Respondents, Jane and John Doe (Does), initiated adoption proceedings for Child after the rights of Child's parents were terminated. Because Child may qualify for protection under the laws protecting an Indian child's welfare, the Tribes were given notice and intervened in the adoption proceeding. The trial court appointed an independent attorney for the child whose costs were to be split by the Tribes and the Does. Discovery disputes arose during the proceeding and the trial court issued sanctions against the Tribes. The trial court found the facts before it insufficient to establish that Child is an Indian child, and thus concluded that the Indian Child Welfare Act (ICWA) did not govern the proceeding. Despite this conclusion, the court applied the ICWA's placement preferences out of concern for Child's best interests. The Does prevailed in the adoption, and the court granted them attorney fees as the prevailing party. The Tribes contest the discovery rulings, sanctions, failure to find Child an Indian child, and the grant of attorney fees against them, claiming sovereign immunity and a misapplication of the law. The Does request attorney fees on appeal.

# II. FACTUAL AND PROCEDURAL BACKGROUND

### 1.    *Prior child protection case*

Child was born in 2010. He was subjected to severe physical and sexual abuse and neglect while under the care of his biological parents. Consequently, when he was two years old, Child was declared to be in imminent danger and placed in shelter care with the Idaho Department of Health and Welfare (IDHW). Because the trial court and the IDHW were aware that Child may be an Indian child, notice of the proceeding was given to the Tribes. The State initiated a child protection case and the Tribes petitioned to intervene, asserting that Child was an Indian child and therefore that the ICWA applied to the proceeding. Their petition was granted and they were made a party to the proceeding.

In that case, the court determined Child was an Indian child, and thus the case was subject to the ICWA, as codified by 25 U.S.C. § 1901 *et seq*. The court found that the ICWA's preferences and requirements were satisfied. At the end of the proceeding the Does were selected as the proper placement for Child, and Child's parents' rights were terminated.

No aspect of the child protection case is challenged in this appeal.

### 2.    *Adoption proceeding below*

On June 20, 2014, the Does filed a petition to adopt Child. That is the case from which this appeal arises. While a separate case from the child custody proceeding, the same judge presided over the adoption. Notice of the adoption proceeding was given to the Tribes, who filed a petition to intervene on July 21, 2014. The trial court granted the Tribes' petition to intervene. In the same order, the trial court appointed independent counsel to represent Child, ordering both the Tribes and the Does to share equally in the fees associated with the appointment. The Tribes challenged this order and filed a motion to reconsider. The trial court denied the motion. The IDHW was later joined as a party.

Because the Tribes' petition to intervene alleged that Child is the biological child of a member of the Tribes and that Child is eligible for enrollment in the Tribes, the Does served interrogatories and requests for discovery regarding these issues. The Tribes did not release the father's 1993 enrollment application (the 1993 Application), claiming it was unnecessary because they had provided conclusive proof of Child's father's status as a tribal member, and that their sovereign privacy act prevented its disclosure. On September 19, 2014, the Does filed a motion to compel the Tribes to respond to discovery and interrogatories. The Tribes objected to the motion to compel and requested a protective order regarding the 1993 Application. The trial court denied the protective order and granted the motion to compel, finding that the 1993 Application was directly relevant to the issue of whether Child was the biological child of a tribal member. Despite the order granting the motion to compel, the Tribes continued to refuse to produce the 1993 Application. The Does filed a motion for sanctions.

The Does also filed a motion to maintain the status quo, asking the court to prevent the Tribes from enrolling Child as a member during the pendency of the litigation. The court granted the motion, temporarily preventing the Tribes from filing or accepting any application for Child's tribal enrollment. That order was never expressly rescinded.

In January of 2015, the Does requested depositions of tribal officials, and the Tribes sought a protective order to stop the depositions or limit their scope. On February 9, 2015, the trial court heard arguments on all of the above motions. It held as follows: (1) sanctions were appropriate for the Tribes' failure to comply with discovery; (2) the Tribes still had to disclose the 1993 Application; (3) while depositions regarding Child's eligibility for enrollment were inappropriate in the face of a tribal resolution to that effect, depositions about other topics like Child's paternity were still appropriate; (4) the Tribes have exclusive authority to determine tribal membership; (5) whether Child was the biological child of his purported father was still a proper issue; and (6) the only issue for trial was whether the Does' adoption of Child is in his

3

best interest. The court then issued written orders with respect to the pending motions. It granted $1,000 in sanctions against the Tribes to cover the Does' attorney fees to file the motion to compel. It based this figure on the rate of $250 per hour for an attorney to do a presumed four hours of work to file the motion to compel.

The depositions of tribal members were postponed at the Tribes' request. The deposition at issue was not set until the eve of trial, at which point the Tribes failed to designate a representative. Considering the Tribes' prior discovery violations, the trial court "found further sanctions appropriate and limited the Tribes' ability to submit testimony or evidence concerning [Child's] biological father's status with the Tribes and whether or not [Child] was eligible for membership in the Tribes." Accordingly, the Tribes were barred "from producing any witness or evidence to show that [Child] is the child of [his purported father] for the purpose of showing that the minor child is a 'biological' child of an enrolled tribal member." The court further prohibited the Tribes from "producing any witness or testimony concerning the eligibility of enrollment of [Child] in the Shoshone-Bannock Tribes."

A number of motions and objections followed. Ultimately, the trial court issued its written findings of fact and conclusions of law, final judgment, and order granting the Does a legal adoption of Child. The court noted that "the Findings of Fact in this case are insufficient to find that [Child] is an Indian child as that term is defined[.]" Nevertheless, the court considered the applicability of the ICWA to the extent that it could provide guidance as to the best interests of Child. Despite recognizing that relevant portions of the ICWA require giving preferential consideration to placement of an Indian child to family members or tribal members, the court concluded:

> Even presuming [Child] is an Indian child pursuant to the [ICWA], there is good cause to deviate from the placement preferences of the action for two reasons: (1) the extraordinary physical or emotional needs of the child as established by testimony of a qualified expert witness and (2) the unavailability of suitable families for placement after a diligent search has been completed for families meeting the preference criteria.

On August 12, 2015, the trial court granted the Does $863 in costs and $35,000 in attorney fees against the Tribes, and further granted Child's counsel $6,056.25 in fees against the Tribes. The Tribes initially challenged the lower court's discovery and sanction rulings, as well as its ultimate grant of petition for adoption and attorney fees. The Does cross-appealed, challenging the Tribes' intervention in the matter. The Tribes have since dropped their challenge to the adoption and the Does correspondingly dropped their challenge to the Tribes' intervention. What remains now is the Tribes' assertion that the lower court's discovery rulings, injunction,

sanctions, grant of fees, and failure to find Child an Indian child were in error. The Does request attorney fees on appeal pursuant to Idaho Appellate Rule 11.2(a) and Idaho Code section 12-121.

### III. ISSUES ON APPEAL

**1.** Whether the trial court impermissibly failed to rule on Child's status as an "Indian child."

**2.** Whether the trial court's order to compel discovery was proper.

**3.** Whether the trial court's sanctions against the Tribes, both the prohibition against presenting evidence regarding Child's status as the biological child of a tribal member or eligibility for tribal membership and the monetary sanctions for attorney fees, were proper.

**4.** Whether the trial court erred by temporarily enjoining the Tribes from enrolling Child during the pending litigation.

**5.** Whether the trial court erred by ordering the Tribes to pay half of the costs for Child's independent attorney.

**6.** Whether the Does are entitled to attorney fees below or on appeal.

### IV. STANDARD OF REVIEW

"[T]his Court exercises free review over the district court's conclusions of law." *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 605, 38 P.3d 1258, 1261 (2002) (internal quotations omitted). We review a non-jury trial court's findings of fact under a clearly erroneous standard. *Id.*; I.R.C.P. 52(a). Clearly erroneous findings are those that are not supported by substantial and competent evidence. *Ossewarde*, 136 Idaho at 605, 38 P.3d at 1261.

As to discovery issues, such as the propriety of a motion to compel, "[t]he decision of the trial court will only be reversed when there has been a clear abuse of discretion." *Nightengale v. Timmel*, 151 Idaho 347, 351, 256 P.3d 755, 759 (2011) (internal quotations omitted). To determine whether a trial court abused its discretion, this Court examines:

> (1) [W]hether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Kirk v. Ford Motor Co.*, 141 Idaho 697, 701, 116 P.3d 27, 31 (2005) (quoting *Sun Valley Shopping Ctr. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

A trial court's grant of sanctions under Rule 37 of the Idaho Rules of Civil Procedure will be overturned when it constitutes a manifest abuse of discretion. *Ashby v. W. Council, Lumber Prod. & Indus. Workers*, 117 Idaho 684, 686, 791 P.2d 434, 436 (1990). Similarly, a trial court's discretionary ruling, such as an order barring the presentation of certain evidence, will be overturned upon a showing of abuse of that discretion. *Gerstner v. Wash. Water Power Co.*, 122 Idaho 673, 677, 837 P.2d 799, 803 (1992).

V. ANALYSIS

The grant of the Does' amended petition to adopt Child is affirmed. No party challenges the ultimate grant of adoption on appeal and there is no reason to disturb it.

**A.      We do not reach the issue of the trial court's failure to find that Child was an Indian child because any error was harmless.**

In order for the ICWA to apply, "state courts must first determine whether the proceedings are 'child custody proceedings' as defined by 25 U.S.C. § 1903(1), and whether the child involved is an 'Indian child' as defined by 25 U.S.C. § 1903(4)." *In re Baby Boy Doe*, 123 Idaho 464, 468, 849 P.2d 925, 929 (1993). The lower court determined as a matter of fact that the Tribes had not established that Child was an Indian child, and therefore the ICWA did not govern the adoption proceeding. We do not address the propriety of that finding as any error contained therein is harmless. Rulings will not be disturbed for harmless error. I.R.C.P. 61.

Error in the trial court's ruling regarding the issue of Child's status as an Indian child is harmless because that determination would have no practical effect on the outcome of the case. The determination would not affect the rights of the parties and would not result in any relief for the Tribes. If Child were deemed an Indian child, the ICWA would have applied. It would have required the trial court to consider placement preferences for Child in favor of Indian families. Despite not concluding that the ICWA did apply, the trial court carefully considered the placement preferences of the ICWA. It reasonably concluded that good cause existed to deviate from the preferences of the ICWA.[1] A finding here that Child was an Indian child thus could not change that outcome and would not provide the Tribes any relief.

It is true that the ICWA, specifically 25 U.S.C. § 1951, would have required the court below to provide certain documents to the Secretary of the Interior. That section would then allow the Tribes to petition the Secretary for any of those documents necessary to determine Child's enrollment eligibility. The Tribes are in the same position as they would be had 25 U.S.C. § 1951 been applied: the record indicates that they already possess all the information the court would have given to the Secretary, and none of it is relevant to Child's enrollment eligibility because the Tribes have already conclusively determined that Child is eligible. Therefore, the application or lack thereof of 25 U.S.C. § 1951 would not have affected the Tribes' rights.

---

[1] "Good cause" is the standard required under the ICWA to deviate from its preferences. 25 U.S.C. § 1915.

Further, the Tribes are not contesting the Does' adoption of Child, so even were we to hold that Child was an Indian child, the Tribes' rights would not be affected in that regard. Our ruling today affects neither the ability of Child to apply for enrollment in the Tribes, nor the ability of the Tribes to enroll Child as a member. The Tribes alone have the sole power to determine their membership or eligibility therefor. "A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n.32 (1978). The Tribes claim the trial court's holding means that Child will miss out on benefits of tribal membership. But the Tribes may still enroll Child as a member, thereby affording him those rights, regardless of our holding today. In fact a ruling from this Court that Child was an Indian child would not guarantee him tribal benefits because such a holding would not bind the Tribes to enroll Child.

Because the applicability of the ICWA would not affect any party's rights, since we cannot dictate tribal enrollment, any error by the trial court regarding Child's tribal status was harmless.

**B.      The trial court's order compelling discovery was an abuse of discretion.**

The trial court abused its discretion when it granted the Does' motion to compel discovery of the 1993 Application because it was not relevant to any issue before the court. As discussed above, the Tribes have sole control over member enrollment and eligibility. During discovery, they produced documentation showing that Child's father was an enrolled member. The Does argued for discovery of the 1993 Application in order to show that the father was not eligible for tribal membership. But the determination of the father's eligibility was and remains in the Tribes' sole discretion. It does not matter how the Does, the trial court, or this Court interpret the Tribes' governing documents regarding eligibility for membership. Child's father's tribal status was conclusively established by the Tribes. The 1993 Application would not lead to any further relevant information on the matter. It was therefore an abuse of discretion for the trial court to order disclosure of the 1993 Application.

**C.      The monetary sanctions granted by the trial court against the Tribes were improper because they were based on an erroneous interpretation of the law, and the non-monetary sanctions were harmless.**

The trial court imposed two types of sanctions against the Tribes: it fined them $1,000 to cover the costs of the Does' motion to compel, and it then later barred the Tribes from presenting evidence regarding Child's tribal status, that of his father, and whether Child is biologically the child of his purported father.

As discussed in the immediately preceding section, one of the underlying bases for the sanctions—the motion to compel—was erroneously granted and an abuse of discretion. Because the underlying order was an abuse of discretion, sanctions for non-compliance with that order are necessarily not consistent with the legal standards applicable to the specific choices available to the trial court and thus the sanctions were also an abuse of discretion. The sanctions are reversed.

While reversal of sanctions preventing a party from presenting evidence may require remand, the reversal of the non-monetary sanctions in this case does not. The Tribes being allowed to present the evidence they sought would not change the outcome of this case. The only effect the Tribes being allowed to present evidence of Child's tribal status would have had was that the ICWA may have been deemed controlling. As discussed in section A, that determination would not have changed the outcome.

**D.      The trial court's order preventing the Tribes from processing or filing any enrollment for tribal membership on behalf of Child was an abuse of discretion.**

The Tribes claim it was error for the trial court to enjoin them from processing or filing any application for Child's tribal membership. The trial court did issue an order to that effect, but that order was not made a part of the final judgment. However, "when an appeal is taken from an appealable order or judgment, [] this [C]ourt has the jurisdiction and authority to review any and all orders and decisions made by the trial court" that were properly preserved. *Utah Ass'n of Credit Men v. Budge*, 16 Idaho 751, 758, 102 P. 390, 392 (1909). Thus, we may review the order preventing the Tribes from enrolling Child because the ultimate judgment in this case was appealable and the Tribes preserved the issue. The Tribes have exclusive power to determine membership and eligibility for membership. Any order by a trial court seeking to limit that power, however temporarily, is an abuse of discretion. Therefore, the order of the trial court preventing the Tribes from processing or filing any application for Child's membership in the Tribes was an abuse of discretion. The Tribes are concerned that the order was never expressly dissolved and thus may still have been in effect. While there is nothing indicating that to have been the case, whatever effect the erroneous order may have had is hereby terminated.

**E.      The trial court erred by ordering the Tribes to pay for one half of Child's attorney's fees.**

A grant of attorney fees in Idaho must be supported by statutory authority or by contract: "We continue to adhere to the so-called 'American rule' to the effect that attorney fees are to be awarded only where they are authorized by statute or contract." *Hellar v. Cenarrusa*, 106 Idaho 571, 578, 682 P.2d 524, 531 (1984). The trial court believed it had the authority to order the Tribes to pay for one half of Child's Attorney's fees. Idaho Code title 16 chapter 15, which

governs adoption proceedings, does not provide courts with such authority, and neither does the ICWA.[2]

Because the trial court ordered this fee payment well before issuing a final judgment in the case, no party could have been a prevailing party eligible for a grant of fees under Idaho Code section 12-121. Therefore there was no statutory authority under which to impose an order requiring the Tribes to pay for one half of Child's attorney's fees.

The Tribes did not have a statutory right to intervene in the adoption proceedings. The ICWA grants a child's tribe a right to intervene only in "any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian Child." 25 U.S.C. § 1911(c). The trial court recognized that the Tribes did not have a statutory right to intervene, but granted the Tribes' petition to intervene pursuant to Idaho Rule of Civil Procedure 24(b).

In the order granting the petition to intervene, the trial court also determined that it was appropriate to appoint counsel for child and ordered that "[t]he costs and fees incurred by counsel shall be shared equally by the Petitioners and the Tribes."[3] The Tribes filed a motion asking the court to reconsider that order and argued that they had not waived their sovereign immunity. In denying a motion to reconsider that order, the trial court orally stated that "it's very clear that the court, sitting as a court of equity, has the authority to order a party to pay for attorney fees." In its subsequent written order denying the motion, the court held that by failing to withdraw their motion to intervene after knowing the costs associated with litigation, the Tribes "implicitly consented to pay those costs as ordered by the Court." The issue of waiver of immunity need not be addressed here because, regardless of immunity, the trial court had no authority to impose these fees against the Tribes.

This was not an equitable adoption. It was a statutory adoption. More importantly, even if the proceedings had been in equity, that would not have given the trial court authority to require the Tribes to pay the attorney fees. *Golder v. Golder*, 110 Idaho 57, 61, 714 P.2d 26, 30 (1986) (in an action in equity for relief from a judgment, attorney fees could only be awarded if

---

[2] The ICWA does contain a provision for the payment of fees by the Secretary of the Interior in certain cases, but makes no mention of any party to the action paying fees.

[3] The trial court did not cite any authority authorizing it to appoint counsel for a child in adoption proceedings, and there does not appear to be any. There is statutory authority for appointing counsel for a child in proceedings to appoint a guardian for a minor, I.C. § 15-5-207(5); in proceedings to appoint a conservator for a minor, I.C. § 15-5-407(a); in proceedings under the Child Protective Act, I.C. § 16-1614(1); in proceedings to terminate a parent-child relationship, I.C. §§ 16-2007(5), 16-2002(8); in proceedings under the Children's Mental Health Services Act, I.C. § 16-2429(1); in proceedings under the Juvenile Corrections Act, I.C. § 20-514(4); and in divorce actions, I.C. § 32-704(4). However, there is no provision for appointment of counsel to represent a child in adoption proceedings that were not consolidated with proceedings to terminate the parental rights of the child's parents.

9

authorized by statute); *see also Excell Constr., Inc. v. State, Dep't of Labor*, 141 Idaho 688, 696, 116 P.3d 18, 26 (2005) (provision in Idaho Code section 72-708 that the practice and procedure under the worker's compensation law be simple and "as far as possible in accord with the rules of equity" did not authorize the awarding of attorney fees); *Fournier v. Fournier*, 125 Idaho 789, 791, 874 P.2d 600, 602 (Ct. App. 1994) (trial court had no authority to award attorney fees to a party on the ground that the court was "[a]cting as a court of equity," because in Idaho "there is no equitable authority to award attorney fees generally").

With respect to the alleged implicit waiver of sovereign immunity, the trial court is holding that the Tribes' failure to immediately withdraw from the lawsuit after the court had made an order that it has no authority to make (ordering the Tribes to pay one-half of the Child's attorney fees) constituted a waiver of the Tribes' sovereign immunity with respect to that order. The trial court did not cite any authority so holding, nor has any been suggested by the parties. "[T]o relinquish its immunity, a tribe's waiver must be 'clear.'" *C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418 (2001). "Indian tribes can waive their sovereign immunity. However such waiver may not be implied, but must be expressed unequivocally." *McClendon v. United States*, 885 F.2d 627, 629 (9th Cir. 1989) (citations omitted). There was clearly no waiver in this case.

Finally, 25 U.S.C. § 1915 states, "In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families." The trial court complied with this requirement and gave the Tribes ample opportunity to offer alternative placements. However, none were found, which may be why the Tribes do not challenge the adoption in this case.

The order requiring the Tribes to pay one half of Child's attorney's fees is reversed. The Does do not challenge their requirement to pay for one half of Child's attorney's fees. That remains in place.

**F.     The additional order granting attorney fees in the Does' favor as the prevailing party violates the Tribes' sovereign immunity.**

Indian tribes are immune from claims brought in both state and federal court unless Congress has authorized the suit or the tribe waived its immunity. *See, e.g.*, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 57 (1978); *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509–10 (1991); *United States v. U. S. Fid. & Guar. Co.*, 309 U.S. 506, 512–13 (1940). Further, any such waiver of immunity must be expressed and cannot be implied; a

rule which the United States Supreme Court has extended to mean that even when a tribe initiates proceedings, it does not waive immunity to counter-claims or cross-claims. *Potawatomi*, 498 U.S. at 509–10. A waiver of sovereign immunity is analyzed the same whether the immunity belongs to the federal government or an Indian tribe. *See Santa Clara Pueblo*, 436 U.S. at 58–59 (1978) (citing to a case involving the United States' waiver of sovereignty to analyze a tribe's waiver). Even when a sovereign entity waives immunity with respect to declaratory or injunctive relief claims, that waiver does not extend to awards of monetary damages. *Lane v. Pena*, 518 U.S. 187, 192 (1996). To be liable for monetary damages, a sovereign entity must unambiguously and expressly waive its immunity specifically with respect to those damages. *See id.*

Therefore, grants of statutory attorney fees against Indian tribes are barred by sovereign immunity unless the tribes waive immunity with respect to those claims. The Tribes in this case did not waive their immunity with respect to attorney fees, either by agreement or by requesting attorney fees of their own. We view as instructive a First Circuit case which addressed the issue as follows:

> [W]e believe that sovereign immunity ordinarily will trump supervisory power in a head-to-head confrontation. The critical determinant is that the doctrines are of fundamentally different character: supervisory powers are discretionary and carefully circumscribed; sovereign immunity is mandatory and absolute. Consequently, whereas the former may be invoked in the absence of an applicable statute, the latter must be invoked in the absence of an applicable statute; and whereas the former may be tempered by a court to impose certain remedial measures and to withhold others, the latter must be applied mechanically, come what may. In other words, unlike the doctrine of supervisory power, the doctrine of sovereign immunity proceeds by fiat: if Congress has not waived the sovereign's immunity in a given context, the courts are obliged to honor that immunity.

*U.S. v. Horn*, 29 F.3d 754, 764 (1st Cir.1994). The order of the trial court granting attorney fees against the Tribes is reversed.

The Does and Child request attorney fees on appeal, but the Tribes do not. Sovereign immunity bars any award of attorney fees against the Tribes. Therefore no attorney fees are awarded on appeal.

## VI. CONCLUSION

The orders of the trial court are affirmed in part and reversed in part. No costs or attorney fees are awarded on appeal.

Chief Justice J. JONES, Justices EISMANN, BURDICK and HORTON CONCUR.