# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44036

| | | |
|---|---|---|
| STELLA WATKINS, as Personal Representative of the Estate of ARTHUR DONALD WATKINS, | ) ) ) ) | |
| Plaintiff-Counterdefendant-Respondent, | ) ) ) ) | |
| and | ) ) | |
| STEVEN G. NEIGHBORS, as Trustee of the A. DON WATKINS REVOCABLE TRUST DATED MAY 1, 2009, RESTATEMENT DATED JULY 8, 2011, | ) ) ) ) ) ) | |
| Counterdefendant, | ) ) ) | |
| v. | ) ) | Boise, May 2017 Term |
| ARNOLD DOUGLAS WATKINS, | ) ) ) | 2017 Opinion No. 97 |
| Defendant-Counterclaimant-Appellant, | ) ) | Filed: September 7, 2017 |
| and | ) ) | Karel A. Lehrman, Clerk |
| BRIAN D. WATKINS and ROBYNLEE WATKINS, husband and wife, and the Marital Community composed thereof, | ) ) ) ) | |
| Defendants-Counterclaimants, | ) ) ) | |
| and | ) ) | |
| DONALD EUGENE WATKINS and KATIE WATKINS, husband and wife, and the Marital Community composed thereof; and VIRGINIA WATKINS, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Melissa Moody, District Judge.

The amended judgment of the district court dated March 4, 2016, is <u>affirmed in part</u> and <u>vacated in part</u>. The judgment of the district court entered on March 16,

2016, awarding costs and attorney's fees to respondent is <u>vacated.</u> The case is <u>remanded</u>.

Dinius & Associates, PLLC, Boise, for appellant. Kevin E. Dinius argued.

Hawley Troxell Ennis & Hawley, LLP, Boise, for respondent. Beth L. Coonts argued.

_____

BRODY, Justice.

This case involves Arthur Donald Watkins' (Father) attempt to recover damages based on a default by his son, Arnold Douglas Watkins (Son or Doug), under a real estate installment contract. The question presented is whether the complaint gave adequate notice of the election to accelerate the debt as required by Washington law. Son also brought a counterclaim for breach of a compensation agreement executed by a sibling acting on behalf of Father using a power of attorney. The compensation agreement purported to obligate Father to pay Son $3,000 per month for life. Father argued that the compensation agreement lacked consideration. The district court held a bench trial. The district court found in favor of Father on his breach of contract claim and on the counterclaim brought against him. Son timely appealed.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

Father was a successful businessman and accumulated a number of businesses and assets over his lifetime, including, nursing homes, airplanes, apartment complexes, storage units, and a cattle ranch. Father and his first wife Florence had six children, three daughters and three sons. The three sons—Doug, Brian, and Donald—and their three spouses were named as defendants in this case. On the eve of trial, Brian and Donald filed bankruptcy and the claims against them were automatically stayed. The case proceeded to trial on Father's claims against Doug and Doug's counterclaim. While the case was pending, Father passed away and Stella Watkins, Father's wife at the time of his death and the personal representative of his estate, was substituted as the plaintiff.

There are two agreements at issue. The first is a real estate installment contract. Father and Florence owned a nursing home in Seattle, Washington. In August of 1984, Father and Florence sold 78% of their interest in the facility to their six children. Son acquired a 13% interest for the agreed price of $676,000. Son paid $65,000 as a down payment. He was obligated

to pay the balance of $611,000 in equal monthly installments of $5,590 plus interest. The contract was amended twice, eventually reducing the monthly payments to $1,645. Florence passed away in 1988. Her interest in the contract was initially transferred to a testamentary trust and later to Father.

On August 2, 2010, Son breached the real estate installment contract by failing to make the full monthly payment when it came due. Son has not made full monthly payments since that time, but he has made partial payments that were accepted on behalf of Father. At trial, Son did not deny that he entered into the real estate installment contract, that the contract is valid, or that he stopped making payments. Rather, Son contended that he does not know or have a record of the balance due under the terms of the agreement, and therefore, denies liability as claimed by Father.

The second agreement at issue is the compensation agreement. Beginning in 1984, Son worked for Father in various capacities, including as a backhoe operator, mechanic, and general farm laborer. In September 1989, Son injured his back while working for one of Father's business ventures, but he continued working for his father after his injury. Son received an hourly wage until September 1993, when he began receiving a salary of $3,000 per month. In December 1995, Son's compensation was reduced to $1,000 per month.

Another son, Brian, assisted Father with the operation of Father's business interests for many years. On October 24, 2000, at seventy-five years old, Father executed a general power of attorney, appointing Brian as his attorney-in-fact to assist Father with the management and operation of Father's business interests. Approximately one week before Father revoked the power of attorney, Brian used it to execute four compensation agreements, purportedly on Father's behalf, requiring Father to make substantial monthly payments to Brian, Brian's wife, and his brothers—Doug and Donald. Son did not sign the compensation agreement. That same day, Brian used the power of attorney to execute a settlement and release agreement, purportedly on Father's behalf. Each of the compensation agreements obligated Father to pay $3,000 per month to each party for life, and at death, to his or her spouse for the spouse's life, and each included a cost-of-living escalator. Brian did not discuss the compensation agreements with Father before signing them, nor obtain Father's approval for the compensation agreements after they were signed. The power of attorney authorized Brian to enter into contracts, but it did not authorize Brian to make gifts of Father's estate.

Father revoked the power of attorney in March 2009. Father filed a complaint against his three sons and their spouses on November 6, 2009. The complaint made claims for rescission, fraud or deceit, constructive trust, unjust enrichment, conversion, civil RICO, and breach of contract. In September 2010, a conservator was appointed for Father. The conservator and an expert retained to trace Father's assets discovered serious issues with the financial records that Brian had maintained. On January 12, 2012, Defendants filed an answer and counterclaim alleging breach of contract relating to the compensation agreements executed by Brian.

Father and Son both filed motions for summary judgment. The district court entered partial summary judgment in favor of Son on Father's fraud claim. Otherwise, the motions for summary judgment were denied and the case proceeded to trial. Father presented his breach of contract claim arising out of Son's default under the real estate installment contract, but did not pursue the other claims. The district court dismissed the other claims on a motion for a directed verdict prior to Son presenting evidence on his claim for breach of the compensation agreement.

On January 11, 2016, the district court issued its Findings of Fact, Conclusions of Law, and Order. It also entered a corresponding judgment as follows:

> 1. Judgment is entered in favor of Plaintiff Arthur Donald Watkins and against Defendant Arnold Douglas Watkins on the breach of contract claim pertaining to the nursing home real estate contract in the amount of five hundred twenty eight thousand six hundred forty dollars and forty three cents ($528,640.43).
> 2. Judgment is entered in favor of Plaintiff Arthur Donald Watkins and against Defendant Arnold Douglas Watkins on the counterclaim for breach of contract on the compensation agreement. Plaintiff owes Defendant nothing.
> 3. On Count V (fraud and deceit), with respect to Defendant Arnold Douglas Watkins only, the claim is dismissed with prejudice.
> 4. All remaining claims against Defendant Arnold Douglas Watkins are dismissed without prejudice.

Son filed a motion for reconsideration asking the district court to dismiss the remaining claims against him *__with__* prejudice. The district court granted Son's motion and an amended judgment was entered on March 4, 2016. The district court awarded Father attorney's fees over Son's objection. Son timely appealed.

## II.
## STANDARD OF REVIEW

"Review of a trial court's conclusions following a bench trial is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. . . . [I]t is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of

4

witnesses . . . . [T]his Court will liberally construe the trial court's findings of fact in favor of the judgment entered. This Court will not set aside a trial court's findings of fact unless the findings are clearly erroneous. If the trial court based its findings on substantial evidence, even if the evidence is conflicting, this Court will not overturn those findings on appeal. Additionally, this Court will not substitute its view of the facts for that of the trial court. This Court exercises free review over matters of law.

*Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2008) (internal citations omitted).

## III.
## ANALYSIS

### A.   The district court erred in concluding that Father was not required to give notice of acceleration.

The district court concluded as a matter of law that Father was not required to give Son notice of default or acceleration of the amounts owed under the real estate installment contract. The district court reasoned that the terms of the real estate installment contract did not require notice and neither did Washington law. Son contends that the district court's legal conclusions were erroneous. We agree in part.

### 1.   Washington law governs the interpretation of the real estate installment contract.

The real estate installment contract has an express choice of law provision that provides that the agreement is to be interpreted and construed according to the laws of the State of Washington. The parties do not dispute that Washington law governs this dispute.

### 2.   Notice of Default.

The terms of the real estate installment contract make it clear that Father was not required to give Son notice of default. The default provision of the agreement states in relevant part:

> Default by Purchaser: It is agreed that in the event the Purchaser shall fail to comply with or perform any condition or agreement hereof or to make any payment required hereunder promptly at the time and in the manner required or in the event the Purchaser shall in any way be in default hereunder, ***seller may without further demand or notice*** declare all amounts due hereunder or otherwise and pursuant to this Contract immediately due and payable so as to effect a true acceleration of the entire balance of the unpaid balance secured hereby. Thereafter the entire balance of the indebtedness to the Seller shall be immediately due and owing and shall draw default interest . . . .

(Emphasis added). If there is a default, the emphasized language gives Father the right to declare all amounts owed immediately due and payable without making a demand on Son and without giving him notice. Son has not pointed to any provision of Washington law that alters this

5

interpretation of the parties' agreement. As such, the district court did not err by concluding that notice of default was not required.

### 3. Acceleration of the amounts owed.

Son contends that the district court erred by holding that notice of acceleration was not required. The district court based its decision on *Jacobson v. McClanahan*, 264 P.2d 253 (Wash. 1953), a case in which the Washington Supreme Court held that notice of intent to accelerate a debt is not required. While we agree that notice of intent to accelerate a debt is not required, the creditor still has to take some affirmative "action" to accelerate the debt and communicate the acceleration to the debtor. In this case, the First Amended Complaint filed by Father did not make it known that he was electing to accelerate all of the amounts owed under the parties' agreement, and the parties did not otherwise litigate this issue at the time of trial.

In Washington, "[t]he law is settled . . . that even if the provision in an installment note provides for the automatic acceleration of the due date upon default, mere default alone will not accelerate the note." *A. A. C. Corp. v. Reed*, 440 P.2d 465, 467 (Wash. 1968). The creditor has to take some affirmative action to accelerate the debt and communicate the acceleration to the debtor:

> The debt does not become due on the mere default in the interest payment. Some affirmative action is required, some action by which the holder of the note makes known to the payors that he intends to declare the whole debt due. ***This exercise of the option may, of course, take different forms. It may be exercised*** by giving the payors formal notice to the effect that the whole debt is declared to be due, or ***by the commencement of an action to recover the debt***, or perhaps by any means by which it is clearly brought home to the payors of the note that the option has been exercised before the interest is paid or tendered.

*Weinberg v. Naher*, 99 P. 736, 737 (Wash. 1909) (emphasis added).

The purpose of this rule is to give debtors some warning that the debt has been accelerated. *See id*. It is important to note that only "some affirmative action" is required. *Id.* at 737. The election to accelerate the debt can be exercised in different ways. *Id*. Washington law only requires that the election to accelerate be made in such a way that the election is "clearly brought home" to the debtor. *Id*. The filing of a complaint may serve as the affirmative action necessary to accelerate the debt. *Id*.

In this case, Father's First Amended Complaint is too vague to accelerate the debt. Father asserted a breach of contract claim against Son. As part of that claim, Father requested a judgment compelling Son to comply with the real estate installment contract, and awarding

Father damages. The complaint stated: "Based on the information currently available to Father, Son is in default of Son's Note and, as of December 1, 2009, the total sum owed thereunder was $205,260.26, plus interest, attorney's fees, and costs." In terms of the relief requested, the First Amended Complaint stated:

> Based on the foregoing, Plaintiff respectfully requests that this Court enter an order compelling Doug to produce any and all records relating to Doug's Note, including a detailed accounting, compelling Doug to comply with the terms of Doug's Note, brining [sic] the same current, and awarding Plaintiff damages against Doug under Doug's Note, as well as Plaintiff's attorney's fees and costs pursuant to Idaho Code § 12-120, -121, and all other remedies available at law or in equity.

Nowhere in this provision does it state that the entire amount due has been accelerated. In fact, the language requiring Doug to "comply with the terms of Doug's Note" and "brining [sic] the same current" can be fairly read as a demand to cure the default rather than as an acceleration of the entire amount owed.

The parties also did not litigate the issue of acceleration at the time of trial. The 2012 version of Idaho Rule of Civil Procedure 15(b), which was controlling when the First Amended Complaint was filed, states:

> When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

"Although I.R.C.P. 15(b) permits a court to base its decision on a theory fully tried by the parties, an issue not tried either [by] express or implied consent cannot be the basis for the decision." *Bolognese v. Forte*, 153 Idaho 857, 863, 292 P.3d 248, 254 (2010) (quoting *M.K. Transport, Inc. v. Grover*, 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980)). Since the language of the complaint is inadequate to give notice of acceleration and the issue was not tried by

express or implied consent of the parties, we hold that there was no acceleration of the debt in this case.

As the entire balance of the debt was not accelerated, the district court's damages award was not supported by substantial evidence and must be recalculated accordingly. We vacate the judgment entered by the district court and remand for further proceedings consistent with this opinion.

**B.      The compensation agreement is not valid or enforceable.**

The district court found that the compensation agreement was not valid or enforceable against Father. While the district court found that the compensation agreement was within the scope of Brian's general power of attorney, the court ultimately found that the compensation agreement did not comply with the requirements of Idaho Code section 15-12-114(1) because Brian did not act in good faith or in the principal's best interest. The court also found that the compensation agreement lacked the consideration necessary to make it enforceable. The court held that a subsequent promise to pay for services already rendered lacks consideration.

On appeal, Son argues that Brian had the power to enter into the compensation agreement. He contends that any bad faith conduct on Brian's part is not relevant to the breach of contract claim involving Son. Son argues that a prior conversation where Father promised to pay Son $3,000 per month was a promise made contemporaneously at the time of the services. He argues that the compensation agreement was merely a written memorialization of previous promises and representations that Father made. We find that the district court's findings of fact support its conclusion that the compensation agreement lacked consideration, and do not reach the issue of whether Brian's bad faith conduct is a defense to Son's breach of contract claim.

The district court made a number of factual findings related to the compensation agreement. The court found that Son worked for Father in various capacities from 1984 to 2000. Son received an hourly wage from 1984 until September 1993, when he began to receive a salary of $3,000 per month. Son received this salary until December 1995, when the compensation was reduced to $1,000 per month. At some point in the late 1990s, Son's monthly pay again increased. On September 30, 2000, Father and Son had a conversation where Father stated his intention to give all three of his sons, including Son, a lifetime payment of $3,000 per month for the work they had performed for Father and injuries they had sustained while working for Father.

8

Son received $3,000 per month from December 2000 until March 2009, when the payments stopped.

After considering all of the evidence, the district court concluded as a matter of law, that at the time Son rendered services to Father, there was no agreement that Son would be compensated for those services in the years to come. Idaho adheres to the majority view that "absent an understanding at the time services are rendered that compensation will later be paid for such services, a subsequent promise to pay for them is unenforceable for lack of consideration." *Collord v. Cooley*, 92 Idaho 789, 792, 451 P.2d 535, 538 (1969). As there was no understanding at the time services were rendered that payment would be made later, the district court properly concluded that the compensation agreement was unenforceable for lack of consideration. Therefore, we affirm the decision of the district court.

**C.     The district court did not abuse its discretion by declining to apply the doctrine of judicial estoppel.**

Son contends that Father took incompatible positions in two different courts and that he should be estopped from doing so. He argued that Father cannot claim in a divorce proceeding that he was paying Son $1,000 per month for Son's injuries, and then deny in this case that he owes Son $3,000 per month for those injuries. The district court, in its discretion, declined to apply the doctrine of judicial estoppel because it did not find Father's positions inconsistent. The district court did not abuse its discretion.

In 1998, Father signed an affidavit in a divorce proceeding that stated, in relevant part that he was paying Son $1,000 per month for injuries he sustained:

> The Respondent has obligations to three (3) of his sons in a combined amount of $5,300.00 per month. $3,000.00 per month is being paid to Brian, a son who was injured while working on the Respondent's ranch. $1,000.00 is being paid to his son, Doug, who was also injured by working on the ranch. $1,300.00 is being paid to Eugene, who was injured when he was working for a business the Respondent used to own in Boise, Idaho. These three (3) sons are unable to hold full time jobs because of the injuries they received while working for the Respondent. The Respondent has been paying these sums to his sons since approximately 1989, which pre-dates the Respondent's marriage to the Petitioner. Without these funds, these individuals would not be able to sustain themselves and their families. This is not being done as a charity, but because of an obligation owed by the Respondent.

Father paid that money—and more—to Son for over a decade. The district court found that "Plaintiff was never obligated—in the legal sense—to give Son a monthly sum for injuries Son

9

sustained while working for Plaintiff." The court held that "Plaintiff's obligation, even back in 1998, was at most a personal or moral obligation. It was never a legal one and Plaintiff's sworn affidavit did not make it a legal obligation."

"The doctrine of judicial estoppel . . . is invoked at the discretion of the court." *McCallister v. Dixon*, 154 Idaho 891, 894, 303 P.3d 578, 581 (2012). To determine whether a trial court abused its discretion, this Court examines:

> (1) [W]hether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Doe v. Shoshone-Bannock Tribes*, 159 Idaho 741, 745, 367 P.3d 136, 140 (2015) (quoting *Kirk v. Ford Motor Co.*, 141 Idaho 697, 701, 116 P.3d 27, 31 (2005)). "Idaho adopted the doctrine of judicial estoppel in *Loomis v. Church*, 76 Idaho 87, 277 P.2d 561 (1954). Judicial estoppel precludes a party from advantageously taking one position, then subsequently seeking a second position that is incompatible with the first." *McCallister*, 154 Idaho at 894, 303 P.3d at 581 (quoting *A & J Const. Co. v. Wood*, 141 Idaho 682, 684, 116 P.3d 12, 14 (2005)). "The policy behind judicial estoppel is to protect 'the integrity of the judicial system, by protecting the orderly administration of justice and having regard for the dignity of the judicial proceeding.'" *Id*. (quoting *Robertson Supply Inc. v. Nicholls*, 131 Idaho 99, 101, 952 P.2d 914, 916 (Ct. App. 1998)). "Broadly accepted, it is intended to prevent parties from playing fast and loose with the legal system." *Id*.

In this case, the district court did not abuse its discretion when it determined that Father did not take inconsistent positions. It is not inconsistent for Father to argue in divorce court that he was paying Son $1,000 per month for injuries, and then argue here that he is not legally obligated to pay Son $3,000 per month. In his affidavit in divorce court, Father did not state that he had an obligation to pay $1,000 per month in perpetuity, and he certainly never agreed or promised to pay $3,000 per month as Son now claims. There is no evidence that Father has taken inconsistent positions with the intent to take advantage of the legal system.

The district court did not abuse its discretion in declining to apply the doctrine of judicial estoppel in this case. Therefore, we affirm the decision of the district court in refusing to apply the doctrine of judicial estoppel.

**D.      The district court's award of attorney's fees and costs to Father is vacated.**

Son challenges the district court's award of attorney's fees and costs to Father. Given our decision to vacate the judgment entered in favor of Father for breach of the real estate installment contract, there is currently no prevailing party. *See Howard v. Perry*, 141 Idaho 139, 143, 106 P.3d 465, 469 (2005) (holding that there must be a prevailing party to award fees). As such, the judgment awarding costs and attorney's fees to Father is vacated.

**E.      Attorney's fees on appeal are not awarded at this time.**

Son requests an award of attorney's fees on appeal pursuant to Idaho Code section 12-120(1), which allows reasonable attorney's fees to the prevailing party. Because the case is not yet resolved, there is no prevailing party. Where there is no present prevailing party because a case has been remanded after an appeal, this Court has refused to award attorney's fees. *Portfolio Recovery Associates, LLC v. MacDonald*, 162 Idaho 228, 236, 395 P.3d 1261, 1269 (citing *Howard*, 141 Idaho at 143, 106 P.3d at 469). If Son is ultimately the prevailing party, then the trial court may award him attorney's fees for this appeal.

## IV.
## CONCLUSION

We affirm in part and vacate in part the amended judgment of the district court entered on March 4, 2016. We vacate the judgment of the district court entered on March 16, 2016 in which costs and attorney's fees were awarded to Father. We remand the case for further proceedings consistent with the Court's opinion. Costs to Son.

Chief Justice BURDICK and Justice EISMANN CONCUR.


HORTON, J., concurring.

I concur with the Court's decision, although to a certain extent this feels as if we are elevating form over substance. However, this is an instance where the forms are significant. As the Court's opinion makes clear, absent express or implied agreement to try the question of acceleration, the district court was required to decide the case based upon Father's Amended Complaint. Further, if acceleration had been pled, the question whether Father took "some affirmative action to accelerate the debt" is a factual matter to be decided by the trial court, not this Court. Thus, we must vacate the judgment.

That being said, by October 9, 2013, Father's actions in this litigation "clearly brought home" to Son that Father was exercising the option to accelerate the debt. *See Weinberg v. Naher*, 99 P.3d 736, 737 (Wash. 1909). The declaration of Father's expert, Denise McClure, in

11

support of Father's motion for partial summary judgment made it clear that the entire obligation was deemed due and owing. However, even if the declaration wasn't sufficiently clear, Father's briefing was:

> In short, ***Don can accelerate the relevant Nursing Home Contracts*** if Brian, Doug, or Gene fail to promptly make a payment, and he can do so without notice. Upon accelerating a Nursing Home Contract, Don is entitled to collect 1.5% interest on the unpaid amount, compounded monthly.
>
> . . .
>
> On August 1, 2010, a full payment came due under Doug's Nursing Home Contract, but he failed to pay that amount in full. Doug himself conceded that he stopped making full payments in July 2010. Since Doug failed to pay the full required amount, he was in default and ***Don was empowered to accelerate the entire amount owing under the agreement without notice. Therefore, as of August 2, 2010, the entire obligation of $768,159.70 came due immediately and has been accruing interest at 1.5% per month, or 18% per year, compounded monthly.*** As of September 30, 2013, the amount due and owing under Doug's Nursing Home Contract was $1,593,263.43. Don is entitled to summary judgment for this amount plus the default rate of interest.

(emphasis added; citations, footnote omitted).

It seems evident to me that Father's first course of action on remand will be to amend his complaint to specifically allege the acceleration which he had previously claimed. If that motion is granted, given Son's unquestioned default, the outcome is preordained.

Justice W. JONES CONCURS.